## Toledo, St. Louis & Western Railroad Company, Plaintiff in Error, v. East St. Louis & Suburban Railway Company, Defendant in Error.

1. APPEAL AND ERROR, § 1491*—*when exclusion of evidence reversible error.* In an action to recover for breach of a contract between railroads providing that defendant should have the right to cross the tracks of plaintiff at grade but should before crossing "flag" such crossing, the exclusion of parol evidence that the term "flagging" as used in the contract had a special meaning, *held* reversible error.

2. CONTRACTS, § 198*—*when evidence admissible to explain the word "flagging."* The term "flagging" as used in a contract between railroads with reference to the right of one railroad to cross the tracks of the other at grade is of a character requiring explanation of its special meaning as so used.

3. CONTRACTS, § 198*—*when evidence competent to explain meaning of words.* Parol evidence is competent to explain not only the technical words of art or science, but also words and phrases having a local or special meaning in a particular calling, trade, business or profession.

4. EVIDENCE, § 319*—*when evidence as to meaning of words does not tend to contradict or vary instrument.* Parol evidence that words used in a written instrument have a technical or special meaning as so used does not tend to contradict or change the instrument.

5. CONTRACTS, § 181*—*how intention of parties to instrument containing technical terms ascertained.* Evidence of a technical or special meaning of words used in a written instrument is the only method of ascertaining the intention of the parties in entering into the agreement, the presumption being that such terms were used according to their understood meaning in the place or business with reference to which the contract is made.

6. CONTRACTS, § 197*—*when presumed parties made contract with reference to business customs.* One entering into a contract in the ordinary course of business is presumed to have done so with reference to any existing general usage or custom relating to such business.

7. EVIDENCE, § 403*—*who should explain words having special meaning.* Where a term used in a written instrument has a special meaning of which people living in one place have a better knowl-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

edge than those living in another place, it is necessary that the term be explained by those having the better knowledge of its· meaning.

8.  EVIDENCE, § 154*—*what constitutes an admission that meaning of term is doubtful.* In an action to recover for breach of a written contract, a party impliedly concedes that the meaning of a term used therein is doubtful by offering evidence tending to show the meaning of such term, without showing that plaintiff knew of or acquiesced in the offer.

9.  EVIDENCE, § 403*—*when testimony of experts admissible to explain term "flagging a crossing."* In an action to recover for breach of a contract between railroads providing that defendant should have the right to cross the tracks of plaintiff at grade, but before crossing should "flag" such crossing, testimony of expert witnesses *held* proper to explain what was understood by railroad men by the term "flagging a crossing."

10.  INSTRUCTIONS, § 115*—*when instruction erroneous as presenting false issue to jury.* In an action to recover for breach of a written contract between railroads providing that defendant should have the right to cross the tracks of plaintiff at grade on certain conditions, in consideration of which it should indemnify plaintiff for loss sustained "by reason of the condition of the crossing or by the failure" of defendant to comply with the requirements of the contract, where the act relied on as breach was the failure of defendant to indemnify plaintiff for a judgment recovered against it for personal injuries sustained in a collision at such crossing between a train of plaintiff and a car of defendant, an instruction that plaintiff could not recover if the proximate cause of the accident was the negligence of plaintiff without reference to the conduct of defendant, *held* to present a false issue to the jury, the issue being whether defendant had complied with its contract, and there being no issue as to the negligence of either party.

11.  CONTRACTS, § 393*—*how jury should be instructed in action for breach of contract.* In an action to recover for breach of a written contract, it is necessary to present to the jury fully and fairly the issue whether defendant has complied with the contract, with a proper interpretation of the terms used in the contract, where such terms are of the character to require such interpretation.

Error to the City Court of East St. Louis; the Hon. W. M.· VANDE-VENTER, Judge, presiding. Heard in this court at the March term, 1915. Reversed and remanded. Opinion filed December 1, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

232    APPELLATE COURTS OF ILLINOIS.

T., St. L. & W. R. Co. v. E. St. L. & Sub. Ry. Co., 197 Ill. App. 230.

C. E. POPE, for plaintiff in error; CHARLES A. SCHMETTAU, of counsel.

BARTHEL, FARMER & KLINGEL, for defendant in error.

MR. JUSTICE McBRIDE delivered the opinion of the court.

This action was commenced by the plaintiff in error, hereinafter called the plaintiff, against the defendant in error, in assumpsit, upon a contract entered into between plaintiff and the Mississippi Valley Transit Company, assignor of the defendant. Judgment was obtained against the plaintiff for costs and it prosecutes this writ of error.

The agreement referred to was made on the 7th of October, 1901, and provided by its terms that it should be binding upon the parties thereto, their successors and assigns, and the defendant is the assignee of the Mississippi Valley Transit Company. The contract was entered into for the purpose of permitting the Mississippi Valley Transit Company and its assigns to cross plaintiff's right of way and tracks on the line of the first public highway crossing west of Edwardsville. There are several provisions in the agreement but only such of them as are in question here will be given.

Section 4 provides "that the second party shall bring all of its cars to a stop before attempting to cross the tracks of the said first party, and said cars shall remain standing until the conductor in charge of said car of the second party flags said crossing."

Section 5. "The trains of the party of the first part shall have the right of way at all times over the said crossing in preference to any cars or trains of the party of the second part, and the party of the second part agrees to adopt such regulations for the passage of the crossing by the cars as the party of the first part may demand and approve."

Section 7. "The party of the second part assumes full responsibility for the proper maintenance and operation of the crossing, and will indemnify and save harmless the said party of the first part, its successors and assigns, against all loss, damage, costs, expenses, actions, claims or demands whatsoever which it or they may at any time suffer or be subject or liable to by reason of the condition of the crossing or the failure of the said second party to flag, as provided for in section 4 of this contract."

Section 8. "It is the intent and meaning of this contract that the operations of the railroad of the party of the first part are not to be hampered or inconvenienced by the operations of the party of the second part, and all expenses incidental to maintaining and operating the said crossing is to be at the sole expense of the party of the second part."

The party of the first part mentioned in said agreement is plaintiff in this suit and the party of the second part is the assignor of defendant.

It appears from the record in this case that about eight o'clock of the night of April 20, 1911, one Anna Perenchio became a passenger upon defendant's car and when the car approached plaintiff's railroad it stopped within about ten feet of the railroad and the conductor of defendant went upon plaintiff's railroad and then signaled the motorman of defendant's car to cross over and while crossing over the car stopped suddenly and was detained from one to two minutes and while on the track a freight train backed up against the car and injured Anna Perenchio.

There is some dispute as to the conditions at the time defendant attempted to cross the railroad. The conductor of defendant's car says that when he went upon the railroad track he saw no car or train on the track. There are two witnesses or more who testified

234    APPELLATE COURTS OF ILLINOIS.

T., St. L. & W. R. Co. v. E. St. L. & Sub. Ry. Co., 197 Ill. App. 230.

that he stated that he saw the freight train backing up but thought he could pass over before the freight train reached the crossing. This conversation is denied by the conductor. There is a conflict in the testimony, also as to whether or not there was a brakeman upon the rear car, and as to whether they had lanterns. Anna Perenchio thereafter brought suit against the plaintiff and obtained a judgment against it for the amount of $6,500 which was paid by the plaintiff and the plaintiff now seeks to recover this amount from the defendant under the contract above set out.

There are several counts in the declaration filed by the plaintiff herein but they are all based upon the sections of the contract above set forth. The first count alleged as a breach that the defendant drove the car on the tracks of the plaintiff without flagging said crossing in accordance with the terms and provisions of said agreement, while a certain engine and cars of the plaintiff were then in motion and approaching said crossing. The second count alleges that it became and was the duty of the defendant to cause said crossing to be flagged and ascertain before attempting to drive its said car across plaintiff's tracks that it could do so in safety and not in any manner hamper or inconvenience plaintiff by the operation of said car, and then avers that it drove said car on said crossing in front of a moving train. The sixth count is, in substance, the same as the first. The seventh count alleges that plaintiff had the right to pass over said crossing without being hampered and impeded by the cars of the defendant, and that the servants of the defendant drove such car upon the tracks of plaintiff without flagging said crossing in accordance with the terms and provisions of the said agreement, and without the engineer or motorman in charge of the engine or motor of said car first having positively ascertained

that the way was clear, and that the said car of the defendant might proceed in safety.

It is the contention of plaintiff that in order to flag said crossing in compliance with the provisions of said agreement, it became necessary to stop the car and for the conductor or motorman to pass upon plaintiff's track and ascertain positively that no train was approaching and that it could with safety pass over plaintiff's tracks before attempting to do so.

During the progress of the trial the plaintiff contended that the word "flagging," as used in said contract, had a special meaning as applied to a contract between a steam railroad and an electric road when used in this connection, and offered to prove by Edward C. Kramer who claimed that he knew the meaning of that term under such conditions, and that for the last seventeen years he had had occasion as attorney to examine, prepare and pass upon crossing contracts, and after stating that he knew the meaning of that term as applied to such contracts he was asked to state to the jury what it meant, which was objected to by defendant, the objection sustained, and then plaintiff stated that he wished to prove by this witness that the term "flagging" as used in the contract in question means that the conductor or other person in charge of such electric car shall go out upon the tracks and look both ways and ascertain if he can with safety permit his car to cross the tracks; that it is his duty in order to properly flag the crossing to positively ascertain whether or not trains are approaching in either direction on the railroad track. To this offer the objection was sustained and the plaintiff excepted. We are of the opinion that the refusal of the court to permit this term to be explained to the jury is reversible error. It appears from the statement of the witness that it has a special meaning when applied to matters of the character involved in

this suit, and it seems to us that it is that character of
a term that would require explanation. It is said by
the Supreme Court of this State: "The testimony of
witnesses is admissible to explain not only technical
words of art or science, but words or phrases having a
local meaning or a special meaning in a particular call-
ing, trade, business or profession. Such evidence does
not contradict or change the written instrument. The
presumption is that such terms were used according to
their understood meaning in the place or the business
with reference to which the contract is made, and evi-
dence as to such meaning is the only method of ascer-
taining the intention of the parties in entering into
the agreement." After citing several authorities the
court further says: "A person entering into a con-
tract in the ordinary course of business is presumed
to have done so in reference to any existing general
usage or custom relating to such business." *Steidt-
mann v. Joseph Lay Co.,* 234 Ill. 88. The position of
counsel for defendant is, that the language of the
contract itself is sufficiently defined to indicate what
it means and, if not, the proper interpretation would
be the interpretation the parties themselves have put
upon it during the ten years it has been in force. He
also urges as a reason: "That flagging the crossing,
especially in St. Clair County, from which the jury
was drawn, is a very common and well known perform-
ance. This case was tried in East St. Louis, into
which city no one can ride on an electric car without
seeing a crossing flagged two or three times." If
the term is of the character that the people who live
in St. Clair County would have a better knowledge of
its meaning than other people then it would seem
necessary for an explanation of the terms by those
who had knowledge of such things. Before the trial
closed, the defendant itself conceded, at least to some
extent, that its meaning was doubtful for it offered

to show how the parties themselves had interpreted this term by placing the motorman and a number of other witnesses upon the stand and asking them what had been the practice for several years last past with reference to flagging a crossing. This offer was made without showing any knowledge or acquiescence of the plaintiff therein, and the objection was sustained and no error has been assigned thereon. It was held that it was proper to permit expert testimony as to what was the meaning by "necessary switchmen and signals." *Louisville & N. R. Co. v. Illinois Cent. R. Co.,* 174 Ill. 457. Also that the testimony of expert railway men was competent to explain and define what was meant by the term "yard" in connection with the operation of railroads. *Garrity v. Catholic Order of Foresters,* 148 Ill. App. 194; and many other cases have been cited and referred to where the meaning of the terms was less doubtful, in our opinion, than the meaning of the term here sought to be interpreted, and it seems to us that it would be highly proper to permit expert witnesses to explain what was understood by the railroad men with reference to the term "flagging a crossing."

It is also contended that the court erred in the giving of defendant's first instruction, which is as follows: "The court instructs the jury that if you believe from the evidence that the sole and proximate cause of the accident or collision complained of in this case was the failure of the plaintiff, through its agents in charge of its train, to exercise due care in the management and handling of such train, then you should find the issues for the defendant, East St. Louis & Suburban Railway Company." It will be observed that this instruction directs a verdict and bars the plaintiff from a recovery herein if it was guilty of negligence and due care in the management and handling of such train, without reference to the

conduct of the defendant. The issue to be tried in this case is not "Was the plaintiff negligent" but "Has the defendant complied with its contract"? And if the defendant has complied with its contract then the plaintiff cannot recover whether it was ever so careful or ever so negligent. We agree with counsel that this instruction presented a false issue for the jury to try. All that the defendant had to do to relieve itself of responsibility was to show that it complied with its contract by flagging the crossing.

We do not believe that this case has been tried upon the issue as presented by the pleadings and that it was necessary and proper to present to the jury fully and fairly the question as to whether or not the defendant had fairly complied with its contract, under a proper interpretation of the terms thereof, where said terms are of the character to require such interpretation.

On account of the errors made by the trial court in the exclusion of the evidence and giving of the instruction referred to, we are of the opinion that there should be another trial, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*