*In re* ESTATE OF ANNA M. NETHERTON, Deceased.—(LILA TOMASZEWSKI, Petitioner-Appellee, *v.* LUELLA ROULSTON, Respondent-Appellant.)

Third District   No. 77-268

Opinion filed July 20, 1978.

BARRY, P. J., specially concurring.

R. J. Lannon, Jr., of Herbolsheimer, Lannon & Henson, P. C., of LaSalle, for appellant.

John Olivero and William LaSorella, both of Peru, and Eugene P. Daugherty, of Streator, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

Luella Roulston appeals to this court from an order of the Circuit Court of La Salle County admitting the will of her mother to probate. Petitioner seeking to probate the will, her sister, Lila Tomaszewski, petitioned the

Circuit Court of La Salle County for probate of the will of (the mother of Luella and Lila) Anna M. Netherton, deceased. The petitioner presented for probate a duplicate original of the will (the original prepared at the time a duplicate copy was also prepared). The original had been retained by the deceased's attorney and both the original and duplicate copy were fully executed by the decedent, Anna M. Netherton. Following an evidentiary hearing, the trial court entered an order admitting the will to probate.

On appeal in this court, Luella, a daughter, contends (1) that the trial court did not give proper weight or consideration to a presumption that a will is destroyed by a deceased after it is retained by the testator and cannot be found after the testator's death and (2) that the trial court improperly admitted testimony of a beneficiary under the will for the purpose of rebutting the presumption of revocation.

The record discloses that Anna M. Netherton died on August 9, 1976, and left surviving as her only heirs at law two daughters, Lila Tomaszewski and Luella Roulston. The will, to which we have referred, was presented for probate on October 22, 1976. At the hearing on proof of the will on November 10, 1976, daughter Luella objected to probate of the will and contended that the presumption of revocation should arise, on the principle that an executed will in the possession of the testator which cannot be found after the testator's death is considered to have been revoked.

The cause was continued for additional evidence, and, at the evidentiary hearing, the testimony established that Anna Netherton's husband, Albert P. Netherton, died on June 30, 1966, at which time, daughter Lila commenced caring for Anna Netherton and residing at the Netherton farmhouse, particularly at night. The evidence disclosed, also, that Lila washed clothes, cleaned house, prepared meals, and performed other household chores at the Netherton residence. Lila was also given a power of attorney to take care of Anna Netherton's financial affairs, and for this purpose Lila had access to a locked bureau drawer in Anna Netherton's bedroom, in which drawer Netherton kept her valuable papers, including bank books, insurance papers and bills.

The record also shows that in early August of 1966, Anna Netherton consulted with attorney John Olivero concerning the preparation of a will, and that on August 10, 1966, Anna M. Netherton executed duplicate copies of a will in the Olivero office. Netherton took with her from the Olivero office one executed copy of the will in an envelope inscribed with the Olivero letterhead, and Olivero, the attorney, retained the other copy (the original) of the executed will in his office. Lila met Netherton in Olivero's waiting room and thereafter drove her mother home, where her mother went to the bedroom with the Olivero envelope. Lila testified at

the hearing that subsequent to August 10, 1966, in the process of looking after her mother's financial affairs, Lila observed in the locked bureau drawer in Netherton's bedroom, a manila envelope with the Olivero heading, stating "Last Will and Testament," and with the inscription "Save" written in her mother's handwriting.

Thereafter on September 23, 1967, Anna Netherton suffered a bad spell and was taken to a hospital by ambulance, and Lila subsequently moved out of the Netherton farmhouse. Mrs. Netherton remained hospitalized until October 2, 1967, when she was removed to a nursing home. An inventory taken at the time Mrs. Netherton entered the nursing home disclosed that she did not have a will in her possession at that time. On August 16, 1969, the Netherton farmhouse was destroyed by fire. It also is noted in the record that Anna Netherton did not return to the farmhouse after her removal by ambulance on September 23, 1967. Lila testified at the hearing that she observed the Olivero envelope in the bureau drawer at the Netherton farmhouse within two weeks prior to the fire, apparently while she was taking care of some financial affairs for her mother.

Following the death of Anna Netherton on August 9, 1976, the executed copy of the will which Mrs. Netherton had taken from the Olivero office could not be located. Lila petitioned for probate of Mrs. Netherton's original will, and presented the executed original of the will, which had been retained in the Olivero office. The will bequeathed the sum of $5,000 to Luella Roulston and the sum of $10,000, plus household goods and personal effects, to Lila Tomaszewski. The will further devised to Lila, all of Netherton's real estate "* * * because of the care, help and attendance that my daughter, Lila Tomaszewski, has heretofore given to myself and my late husband * * * for the past 10 years or more and the same care, help and attendance which she shall hereafter give to me during the remainder of my life * * *." Following presentation of the evidence, the trial court entered an order admitting the will to probate.

■■ On appeal in this court, Luella Roulston first contends that the trial court did not give proper consideration or weight to the presumption that a will which has been retained after execution by a testator, which cannot be found after the testator's death, was presumed to be destroyed by the deceased with the intent to revoke the will. In reviewing the trial court's findings of fact, we must give consideration to the fact that it is within the province of the trial court to weigh the evidence presented and to make findings of fact, and unless the holding of that court is manifestly against the weight of the evidence, a reviewing court will not disturb its judgment. *Central Steel & Wire Co. v. Coating Research Corporation* (1st Dist. 1977), 53 Ill. App. 3d 943, 947, 369 N.E.2d 140.

We note also that the supreme court of this State in the case of *In re Estate of Moos* (1953), 414 Ill. 54, 57, 110 N.E.2d 194:

"Where a last will and testament, after its execution, is retained by the testator and cannot be found upon his death, it is the well-settled rule of this and of the majority of jurisdictions that it will be presumed to have been destroyed by him *animo revocandi*. [Citations.] The same cases establish that the presumption is subject to being rebutted by circumstances which tend to show a contrary conclusion, and that the burden is on one seeking to probate such a will to prove that it was unrevoked at the testator's death."

In the instant case, the testimony indicated that Anna Netherton retained one copy of her executed copy of her will and placed that copy in her bureau drawer where she kept her valuable papers. The record indicates that the will remained in the drawer when Anna Netherton was taken ill and suddenly removed to the hospital. The Netherton farmhouse was subsequently destroyed by fire. Anna Netherton had not returned to the farmhouse in the intervening period and the destruction of the house and its contents explains the inability to find Mrs. Netherton's copy of the will after her death. We also note that Lila did continue to care for and reside with her mother, Anna Netherton, so long as Anna resided at home, and that this care and attention was the expressed motivation for the provisions of the will in favor of Lila, including the gift of the farmhouse property to Lila. In view of the evidence presented, we agree with the trial court as to the presumption relied upon by the objector Luella, that the conclusion of the trial court that the fact that the copy of the will could not be found after the testator's death, did not, under the facts in this cause, require the application of the presumption of destruction of the will by the testator. There are sufficient facts and circumstances shown by the record which indicate that the duplicate copy of the will was not destroyed by the testator *animo revocandi* and that the finding of the trial court is not contrary to the manifest weight of the evidence (*In re Estate of Morgan* (1945), 389 Ill. 484, 59 N.E.2d 800; *In re Estate of Moos* (1953), 414 Ill. 54, 57, 110 N.E.2d 194; *In re Estate of Carr* (1st Dist. 1970), 126 Ill. App. 2d 461, 262 N.E.2d 54). As stated in *Stefany v. Synek* (1st Dist. 1965), 55 Ill. App. 2d 465, 470, 205 N.E.2d 265:

"This presumption [of revocation], however, weighs lightly and may be rebutted by proof of actual facts."

Certainly, in the instant case, where there was evidence of continued possession by the testator, in the drawer at the farmhouse, and the fact that she had not returned to the farmhouse after she had been removed by ambulance, followed by destruction of the farmhouse and all of its contents, clearly explains the failure to present the copy of the will which had been retained by the testator, and rebuts the presumption of revocation. The evidence, also, clearly established the paramount interest

of the testator in her daughter Lila, who had performed much personal service for her. There was no evidence to indicate any desire on the part of the testator to change her will to increase any bequest or devise to daughter Luella.

■■ Daughter Luella also argues, on this appeal, that the testimony of Lila, beneficiary under the Netherton will, is barred by the Dead Man's Act (Ill. Rev. Stat. 1977, ch. 51, par. 2), and that such testimony was improperly admitted into evidence by the trial court. Initially, we note that much of Lila's testimony related to the observance by Lila of the Olivero envelope in Mrs. Netherton's bureau drawer and other matters which took place outside the presence of Mrs. Netherton, and that such testimony is not barred by the Dead Man's Act (Ill. Rev. Stat. 1977, ch. 51, par. 2). The disqualification of testimony of an interested party under the Dead Man's Act is limited to testimony of conversations with the deceased or an event which took place in the presence of the deceased. *Doyle v. Doyle* (1913), 257 Ill. 229; *VanMeter v. Goldfarb* (1925), 317 Ill. 620.

■■ It also appears that Luella did not object on the basis of the Dead Man's Act to any testimony elicited from Lila on direct examination and that Luella objected to only two questions asked of Lila on cross-examination by the guardian ad litem. It is clear that the failure to make a timely objection on the ground of incompetency to a majority of the questions which were directed to Lila, rendered Lila's responses to those questions competent and waived, for the purpose of appeal, the issue of competency with respect to those responses. *In re Estate of Berg* (1st Dist. 1975), 34 Ill. App. 3d 379, 340 N.E.2d 51; *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144.

On two occasions, counsel for Roulston did object on the basis of the Dead Man's Act to questions posed to Lila by the guardian ad litem. At one point, Lila was asked whether she had any conversations with Netherton regarding the purpose of Netherton's visit to the Olivero office, and Lila responded, over objection, that she had no such conversation. When asked by the guardian ad litem whether Netherton had told Lila that the Olivero envelope contained Netherton's last will and testament, Lila replied, over objection, that Netherton had made such a statement to Lila. After consideration of the record, we have determined that any error in the admission into evidence of the responses to the above questions was harmless. There was evidence that the document retained by the testator when she left the Olivero office was a duplicate copy of her will, so that the statement of Lila in response to the question of the guardian ad litem was simply cumulative and harmless. There was substantial evidence in the record (without considering Lila's responses to the two questions objected to on the basis of the Dead Man's Act), which evidence indicated that Mrs. Netherton's copy of her will was

60

inadvertently destroyed when her home was destroyed by fire, and also that Lila cared for her mother in accordance with the terms of the will. The record also shows that there was no evidence indicating an intention of Mrs. Netherton to revoke or revise her will of August 10, 1966. In view of the entire record in this cause, therefore, we conclude that any error in the admission of evidence of the two responses objected to by Luella, was harmless and did not affect the outcome in this cause.

For the reasons stated, therefore, the judgment of the Circuit Court of La Salle County is affirmed.

Affirmed.

STENGEL, J., concurs.

Mr. PRESIDING JUSTICE BARRY, specially concurring:

Although I agree with the result of the majority, I can not agree with their findings and reasoning. The facts and circumstances presented are insufficient to establish that the duplicate copy of the will was not destroyed by the testator *animo revocandi*. There is evidence that the duplicate copy was executed, placed in an Olivero envelope, and taken to the Netherton home, all of which occurred in August 1966. Three years later, however, when the Netherton farm house was destroyed by fire, there is no evidence of whether the duplicate copy of the will was yet contained in the Olivero envelope in Mrs. Netherton's bureau drawer.

Yet the uncontroverted circumstances here do not lend themselves to the application of the harsh, but well-settled, rule that, when a last will and testament can not be found at the death of the testator, it will be presumed to have been destroyed. As the majority recognizes, there exists no evidence of any intention on the part of Mrs. Netherton to revoke or revise her will. More importantly, the only original executed will was admitted to probate and remains part of the record, and destruction of a mere copy can not revoke a will. Therefore it is irrelevant to consider the presumption of destruction and the failure to present a duplicate executed copy.

Certainly, it is unfortunate that some practitioners request that testators sign more than one copy of a will. Difficulties of the kind arising in this case could be avoided by having the testator sign only the original document. If it is deemed necessary, a photocopy of the executed original can readily be made. In this way, the testator will not be more easily deprived of the opportunity to revoke the will, wherever it is located, and the possibility is reduced that the testator will become confused and will destroy an executed duplicate copy, that might be in his or her possession, thinking it to be an original.

Given my reasoning, it is unnecessary to decide the evidentiary issue. However, were it necessary to decide that issue, I would be compelled to dissent. Because a plaintiff has the burden of proving his case by a mere preponderance of the evidence, it is doubtful that any error of a trial court in a civil matter can ever be considered harmless. Furthermore, the presumption that the trial court considered only competent evidence has been rebutted by the fact that the trial court overruled two objections to testimony which the majority impliedly condemned as incompetent. As a result, I believe the majority's discussion pertaining to this issue is dicta and should not be considered mandatory authority for future cases.