RICHARD LUCAS *et al.*, Plaintiffs and Counterdefendants-Appellees, v. WILBUR L. BEATON, JR., *et al.*, Defendants and Counterplaintiffs-Appellants.

First District (1st Division)   No. 1—88—1407

Opinion filed June 29, 1990.

Harvey J. Barnett & Associates, Ltd., of Chicago (Michael S. Blazer, of counsel), for appellants.

McCracken & Walsh, of Chicago (Thomas J. McCracken, Jr., and Thomas G. Moffitt, of counsel), for appellees.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Richard Lucas, Richard Johnson, Wallace Oshiro, Kenneth Darby and David Accardi (plaintiffs) brought a declaratory judgment action against Wilbur L. Beaton, Jr., and Rosonne Delagarza (defendants) in the circuit court of Cook County, seeking a declaration that plaintiffs were relieved from their contractual obligation to defendants to pay the remaining balance on the purchase price of a corporation's stock due to defendants' breach of a noncompetition covenant. Defendants, in turn, filed a counterclaim seeking to recover the $22,000 remaining balance. Following a bench trial, the circuit court entered judgment in favor of plaintiffs on the complaint and counterclaim. Defendants appeal from both judgments, contending that the circuit court committed reversible error in relying on parol evidence to construe the noncompetition covenant and that the court's finding that defendants breached the terms of the noncompetition covenant is against the manifest weight of the evidence. We affirm.

In late 1982, plaintiffs, who were operating a private investigation firm, entered into discussions with defendants regarding the sale of defendants' companies. In a "Stock Transfer Agreement," dated January 1, 1983, defendants sold to plaintiffs all of the stock in Beaton Services, Ltd., a process serving company, for a purchase price of $52,000. The agreement provided that the $52,000 was to be paid $20,000 initially with the remaining $32,000, designated as payments for consulting fees for tax purposes, over a four-year period. Beaton retained his ownership interest in his private investigation company, known as Beaton & Associates, as well as the right to use the name "Beaton." The agreement also contained a covenant not to compete, which provided:

"The Sellers, and each of them, either in their individual names, or in the name of any Corporation or partnership or other business entity with which they may be associated or employed, or in which they shall have any ownership interest,

covenant and agree that they will not, for a period of five (5) years from the date hereof, compete with the Corporation in offering or performing process serving and/or fingerprinting business or services in the Chicago metropolitan area, being defined as Cook County and the adjacent five (5) counties, which covenant is conditioned upon neither the Corporation nor the Purchaser being in default under any of the terms hereof."

On March 16, 1984, Beaton & Associates and Beaton entered into an agreement with Hampson & Associates, Inc., and Thomas R. Hampson for the sale of the assets of the private investigation company for $40,000, to be paid $10,000 in the first year with the remaining balance, denominated as fees for consulting services rendered by Beaton under a consulting provision, over a three-year period. As a contingency to the agreement and under risk of being assessed $5,000 in liquidated damages for failure to do so, the agreement required Beaton to provide his private detective license for use in the business. The agreement's consulting provision entitled Beaton to a percentage of gross profits in lieu of the fixed payments in the event the company reached specified levels of income. It also entitled Beaton to sales fees in the form of percentages of gross revenues for any new business that he would introduce to the company.

Immediately following the sale, Hampson began operating the business under the new name of Beaton & Associates, Inc. Shortly thereafter, Hampson began to engage in the business of process serving. In August of 1984, Hampson segregated Beaton & Associates' process serving function from its private investigation function into a separate corporation known as Search International Services.

In their complaint for declaratory judgment, plaintiffs alleged that defendants breached the noncompetition covenant in the stock transfer agreement in that they "have performed and continued to perform process serving in the Chicago metropolitan area in direct competition with [plaintiffs]." In their counterclaim, defendants alleged that they had performed all duties required of them under the agreement. The trial on these claims adduced the following testimony.

On adverse examination, Hampson testified that his company performed process serving as an accommodation to clients and as a means to develop a relationship. After he began to engage in the process serving business, he had a discussion with Beaton in May or June 1984, wherein Beaton expressed concern about being associated with Hampson's process serving due to the agreement with plaintiffs.

Hampson again discussed the matter with Beaton in the summer of 1984, and, to accommodate Beaton, Hampson informed him that he would use a separate corporation for the process serving. The letterhead and the billing for the new corporation continued as Beaton & Associates until a different letterhead was acquired in October or November of 1984.

Hampson admitted that the name Beaton & Associates, Inc., is listed with the name Search International throughout the companies' advertising brochure and on their letterheads. He also acknowledged Beaton & Associates' advertisement listing Beaton and Hampson in equal prominence in the Sullivan's Law Directory, as well as the 1985 Official Directory of the Council of International Investigators, in which Beaton listed himself as being associated with Beaton & Associates. He further acknowledged Search International's advertising circular representing itself as a "family of investigative services" and representing that "for more than 20 years Beaton & Associates has been recognized throughout the Chicago area as a leader in the investigation field." Hampson stated that Beaton refused to distribute the brochures which included the process serving advertisement and that Beaton never distributed any advertising material for him.

Hampson testified that his two companies operated out of the same office, used the same furniture, possessed the same telephone number, answered as "Beaton & Associates," and shared a secretary who was paid by Beaton & Associates. Hampson identified numerous bills from each company which were paid out of the account of the other company. Hampson stated that an employee who performed both investigative and process services for a client would be paid solely by Beaton & Associates, and clients, in instances where the investigative services were performed for another detective agency, would be billed payable to Search International.

Hampson further testified that Beaton & Associates used Beaton's detective license until 1987 and that Beaton continued to accept payments under the sale of assets agreement until the installments were fully paid in March 1987, although he never received a percentage of gross revenue in lieu of the fixed payments. Hampson contemplated that Beaton would solicit business for Beaton & Associates, and commission payments were made to Beaton, although "[not] very many," pursuant to the agreement's new-client referral provision. Hampson identified a $40 check as one of those payments.

Hampson additionally testified that neither Beaton nor Delagarza has ever owned an interest in, or has been an officer of, either of his companies. Delagarza performed two days' typing work for which

Beaton & Associates paid her $80, but she never performed any other services. Beaton referred investigative clients to the investigation company and, pursuant to the terms of the consulting agreement, initially provided advice on client and attorney relations and routine office matters, but he was never in charge of, or had any voice in, either company. Neither Beaton nor Delagarza has ever performed any process serving for the companies.

Lucas testified that when he informed Beaton in the summer of 1984 that he had learned of Beaton & Associates' process serving, Beaton denied any involvement with Beaton & Associates. Lucas testified that when he would telephone Beaton at the Beaton & Associates number during the spring of 1984 through the fall of 1984, messages were taken for him. On cross-examination, Lucas admitted that he was not aware since January 1, 1983, of any instance where Beaton or Delagarza personally served any legal paper.

Victor May, a private detective for 20 years, testified that the investigation business and the process serving business are closely related and that, in his experience, performing process serving increases investigation business 50% of the time.

Beaton testified that when he suspected Hampson was process serving, he told him of his desire not to be involved in process serving. Beaton stated that he never distributed advertising materials for Hampson's companies, nor did he refer any process serving clients to the companies. He further testified that his full-time employment since March 18, 1984, has been at the Cook County medical examiner's office.

In entering judgment in favor of plaintiff on the complaint and counterclaim, the circuit court found that Beaton had breached the covenant not to compete by being associated with a company which performed process serving. It found that Delagarza was also in breach of the covenant by virtue of the joint and several obligations under the noncompetition covenant.[1]

■■ On appeal, defendants first contend that the circuit court violated established contract principles by relying on parol evidence to construe the noncompetition covenant. It is established that a court's primary objective in construing a contract is to give effect to the intention of the parties (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683) and that contract terms must

---

[1]As defendants have not raised the issue of Delagarza's joint and several obligation under the noncompetition covenant, we will assume the correctness of the circuit court's ruling on this issue.

be given their ordinary and natural meaning where the terms are clear and unambiguous (*Board of Education v. Chicago Teachers Union, Local 1* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587, *rev'd on other grounds* (1981), 88 Ill. 2d 63, 430 N.E.2d 1111). Accordingly, where the contract is unambiguous, there is no need to inquire into the intention of the parties. *P.A. Bergner & Co. v. Lloyds Jewelers, Inc.* (1986), 112 Ill. 2d 196, 492 N.E.2d 1288.

■ At no time during trial did the court find the noncompetition clause to be ambiguous. It allowed testimony from Lucas regarding the negotiations to the agreement and his understanding of the non-competition covenant, but only for the purpose of determining the materiality of the noncompetition covenant for the joint and several liability issue. Its remarks during the directed verdict and closing argument stages demonstrate its reliance on the four corners of the agreement to construe the noncompetition clause as prohibiting defendant from associating with a company which engages in process serving. Despite the court's clear position throughout the evidentiary and argument stages, its comments, when entering judgment two weeks following the trial, indicate that it relied on extrinsic evidence in its ruling on the meaning of the terms of the agreement:

> "Plaintiffs say *** the language [in plaintiffs' contract] makes clear, in the context in which it was negotiated, that defendants could not compete either individually or through an association with another competing business.
> * * *
> Unquestionably [the language in the Hampson contract] makes it unmistakable that Beaton cannot engage in competitive activity *** in any business that engages in competitive activity ***.
> I agree that the language [in plaintiffs' contract] is not as unmistakable as [the language in the Hampson contract.] However in my judgment, although in different words ***, in the context in which it was agreed, Paragraph (c) in effect limits WB, or Wilbur Beaton, and Rose Delagarza's conduct in the same way ***.
> * * *
> That is the only interpretation that makes any sense in my opinion, given the context within which the deal between plaintiff and defendant was made.
> * * *
> Despite the somewhat ambiguous language of [plaintiffs' contract], and given the testimony concerning the negotiations

and given the context in which they occurred and the objective served by the agreement, in my opinion the parties unquestionably intended to limit Beaton and Delagarza's competitive activity both individually or personally and associationally through a competing business."

From the above, it is evident that the court erred in relying on extrinsic evidence in determining the meaning of the covenant since it had not found the agreement to be ambiguous or admitted the extrinsic evidence for that purpose.

Defendants contend that, as a result of the court's improper reliance on the extrinsic evidence, it found a meaning contrary to the unambiguous terms of the clause. Plaintiffs, on the other hand, argue that any improper reliance on this extrinsic evidence was harmless because defendants were not prejudiced since the evidence was merely cumulative in light of the unambiguous language of the noncompetition clause itself.

■ The question of whether a contract is ambiguous is a question of law to be determined by the court. (*Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 452 N.E.2d 667; *Board of Education*, 89 Ill. App. 3d 861, 412 N.E.2d 587.) A contract is ambiguous only where the language is reasonably and fairly susceptible to more than one meaning (*Lenzi*, 116 Ill. App. 3d at 1016, 452 N.E.2d 669), and assertions by the parties that contrary meanings should be ascribed to the language are not determinative of the issue (*Board of Education*, 89 Ill. App. 3d at 866, 412 N.E.2d at 591).

Defendants assert that, contrary to the court's finding that the noncompetition clause prohibited defendants from competing with plaintiffs in the offering of process serving in their own name or in association with any entity, the language only precludes defendants from offering or performing process serving individually or in the name of another company. The clause, defendants explain, first sets forth to whom it applies—sellers in their individual names or in the name of any business entity with which they are associated—and then prohibits them from "competing," defined as "the offering or performing of process serving."

The circuit court found this interpretation made "no sense at all" because it would allow defendants to own a competing company, as long as they personally did not compete. It noted that defendants could argue that the words "the sellers *** will not *** compete" are broad enough to embrace a competing business owned by defendants, but reasoned that if that were the intent, then the words "in the name of any *** business entity *** in which they have an own-

ership interest" would be superfluous and unnecessary.

■ We believe that the court's reading of the language is the correct construction of the covenant and that the language is unambiguous since it is not reasonably susceptible to more than one meaning. Accordingly, because the court's interpretation of the clause may be ascertained as a matter of law from the unambiguous terms of the noncompetition clause itself, we find the court's improper reliance on extrinsic evidence in reaching its ruling to be harmless. See *Canales v. Dominick's Finer Foods, Inc.* (1981), 92 Ill. App. 3d 773, 416 N.E.2d 303; *In re Wheeler* (1980), 86 Ill. App. 3d 564, 408 N.E.2d 424; *McFail v. Braden* (1960), 19 Ill. 2d 108, 166 N.E.2d 46.

■ Defendants alternatively contend that the circuit court erred in finding that they were associated with a process serving company. Defendants recognize that this finding is a factual finding which will not be disturbed on review unless it is against the manifest weight of the evidence. (See *In re Estate of Netherton* (1978), 62 Ill. App. 3d 55, 378 N.E.2d 800.) Nonetheless, they assert that a reversal is warranted because, notwithstanding some evidence as to Beaton's connection with Beaton & Associates, the investigative company, no evidence was presented to show any association with process serving.

The record, however, demonstrates that requisite proof of Beaton's association with Beaton & Associates would support the court's finding because of the uncontroverted evidence that Beaton & Associates engaged in the process serving business shortly after Hampson acquired the investigation company in March 1984 until at least August 1984 when Hampson formed the separate corporation of Search International. Sufficient proof of such an association was adduced at trial.

Following the sale of the assets of Beaton & Associates in 1984 until 1987, Beaton & Associates used Beaton's detective license. Illinois law requires that a detective agency have a "full-time Illinois licensed private detective in charge" and that corporations operating as detective agencies have "at least one officer or executive employee" so licensed. (See Ill. Rev. Stat. 1985, ch. 111, par. 2664(d)(3).) In addition to this connection, Beaton had a potential financial interest in Beaton & Associates through his contractual right to receive a percentage of the company's profits in circumstances where the company reached certain levels of income and Beaton received commission payments, albeit "[not] very many," under the agreement's new-client referral provision. Beaton also initially provided consulting and advice to Beaton & Associates on client, attorney and office matters. Finally, Beaton's name was prominently dis-

played in Beaton & Associates' advertisement and Beaton represented himself as being associated with Beaton & Associates in an official directory.

■ This evidence supports a finding that defendants violated the noncompetition covenant not only because Beaton & Associates itself performed process serving, but also because of Beaton & Associates' intimate relationship with a company performing process serving. Hampson's testimony that process serving is performed as an accommodation to their investigative clients and as a means of developing a relationship, as well as May's testimony that process serving increases investigation business 50% of the time, demonstrates that the business functions of Beaton & Associates and Search International were closely intertwined. Possessing such an interrelationship, the two companies listed themselves together on letterheads and advertised jointly in the same advertising brochure, which listed the companies as members of a "family of investigative services." The two companies also operated out of the same office, possessed the same telephone number, which answered "Beaton & Associates," shared the same employees, and commingled their funds. From this evidence, we believe the court could properly find that defendants associated with a process serving company through their association with a company so intimately related to a process serving company.

Accordingly, we hold that the circuit court correctly construed the terms of the noncompetition covenant and that its finding that Beaton associated with a process serving company is not against the manifest weight of the evidence.

Affirmed.

CAMPBELL and MANNING, JJ., concur.