THE VILLAGE OF GLENVIEW, Plaintiff-Appellee and Counterdefendant-Appellee, v. NORTHFIELD WOODS WATER AND UTILITY COMPANY, INC., Defendant-Appellant and Counterplaintiff-Appellant and Third-Party Plaintiff-Appellant (Citizens Utilities Company of Illinois, Third-Party Defendant-Appellee).

First District (4th Division)   No. 1—89—2523

Opinion filed June 20, 1991.

Ronald Gertzman, of Chicago, for appellant.

Jeffrey M. Randall, of Randall, Gayle & Patt, of Glenview, for appellee Village of Glenview.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, the Village of Glenview, sought a declaratory judgment in the circuit court of Cook County that defendant, Northfield Woods Water and Utility Co., Inc. (hereinafter Northfield), was not entitled to a water connection fee pursuant to the contract between the parties. Defendant answered plaintiff's complaint and filed a counter-

claim alleging an entitlement to an accounting for water connection fees. Plaintiff made a motion for summary judgment. The trial court granted the motion and entered a declaratory judgment order in favor of plaintiff.

On appeal, the issues for review are (1) whether the threshold requirements for summary judgment were met; (2) whether the trial court properly interpreted and construed the term "extension" in the contract between the parties and whether the proper construction of this term renders the trial court's grant of summary judgment erroneous; and (3) whether a party to a contract may introduce opinions from States other than the State whose law governs the contract in order to interpret the contract.

We affirm.

Prior to 1977, defendant owned and operated a well water distribution system pursuant to a certificate of convenience and necessity issued by the Illinois Commerce Commission in a geographic area known as the Northfield Certified Area and located adjacent to plaintiff's municipal boundaries. The source of the well water supply for defendant was located within the Northfield Certified Area.

During the same period of time, plaintiff operated a municipal water distribution system which served a substantial portion of its residents with Lake Michigan water purchased from the Village of Wilmette for resale. However, plaintiff's citizens who resided in its western portion were supplied with well water by defendant and the Illinois Municipal Company. The Illinois Municipal Company operated pursuant to a certificate of convenience and necessity issued by the Illinois Commerce Commission in a certified geographical area adjacent to the Northfield Certified Area.

In or around June of 1977, plaintiff entered into an agreement with defendant for the purchase of Northfield's well water distribution system, which included, but was not limited to, real estate, wells, well pump and discharge systems, water mains, and other physical properties, for the price of $2,200,000. In October of 1977, both parties signed a contract for the sale and purchase of the water distribution system (hereinafter purchase agreement). In recognition that there were undeveloped areas within the Northfield Certified Area at the time the purchase agreement was signed, paragraph 5 of the purchase agreement provided for additional compensation to be paid by plaintiff to defendant for a 15-year period for connections made to Northfield's water main system. Paragraph 5 of the purchase agreement provides as follows:

"5. *Future Participation by Company.* The Village and the Company agree that in addition to that purchase price determined in paragraph 4, the Company shall receive payment from the Village from time to time for connections made within the present service area as identified and outlined on the map, Exhibit 'C' attached hereto, and for connections made in territory outside the [Northfield Certified Area] that may be hereafter serviced by the Village through Sellers' [*sic*] present water main system or any extension thereof. The connection charge to be paid by the Village to the Company shall be $350 per residential customer or customer equivalent. Such connection charges shall be paid by the Village to the Company within 30 days after any such connections have been made. A residential customer includes such single family dwelling and the connection fee for each multiple family structure shall be $350 times the number of dwelling units contained therein. The connection charge due the Company for a non-residential user shall be calculated by estimating (such estimates to be submitted by the proposed use) the total number of gallons of water that will pass through the water meter(s) during the first twelve months of water use, and dividing such total by 150,000 with the resulting decimal amount (rounded to the nearest 1/100 of 1%) to be multiplied by $350."

Subsequently, plaintiff converted the system's source of supply from well water to Lake Michigan water by constructing and connecting a 30-inch water transmission main to a water transmission main owned by the Village of Wilmette located at the intersection of Wilmette Avenue and Laramie Avenue in Glenview. The Village of Wilmette, which is located directly east of Glenview, obtains water directly from Lake Michigan. Plaintiff's water transmission main runs westerly from the Village of Wilmette to a location near the Chicago and Northwestern Freight Line on East Lake Avenue in Glenview. At that location, the 30-inch water main narrows in size and connects to a 24-inch water main which runs west to the Portage Run Reservoir, located in the former Northfield Certified Area.

In March of 1984, plaintiff entered into an agreement with the Citizens Utilities Company of Illinois (hereinafter Citizens) to sell Lake Michigan water to Citizens for resale by Citizens to its customers in the Village of Mount Prospect and the City of Prospect Heights. Citizens is an Illinois public utility regulated by the Illinois Commerce Commission. In 1984, Citizens entered into a contract

(hereinafter Glenview/Citizens Contract) with plaintiff to purchase water from Glenview.

Three conditions precedent were made a part of the Glenview/Citizens Contract. Two of the three conditions were satisfied and are not the subject of this appeal. However, the remaining condition requires plaintiff to seek a declaratory judgment mandating that it is not required to pay a connection fee to Northfield pursuant to paragraph 5 of the purchase agreement as a result of the Glenview/Citizens Contract. If the declaratory judgment in favor of plaintiff is affirmed by this court, the third condition precedent specified in the Glenview/Citizens Contract will be satisfied.

The Glenview/Citizens Contract provides for the construction of a 20-inch water transmission main to connect to the Citizens' water main system at the intersection of Joy Lane and East Lake Avenue in Glenview. Water from Lake Michigan will flow through the Village of Wilmette, which draws its water from Lake Michigan, and on through the aforementioned 30-inch water transmission main until the 24-inch water transmission main connects to the contemplated 20-inch water transmission main by means of a T-valve connector. At the T-valve connection point, the water will continue to flow in a westerly direction to the Citizens water main system.

On March 18, 1987, plaintiff filed an action for a declaratory judgment in accordance with the Glenview/Citizens Contract. Plaintiff sought a judgment declaring that the term used in the purchase agreement requiring connection fees for the extension of the Northfield water main system was inapplicable.

Defendant answered the complaint and filed a counterclaim alleging an entitlement to an accounting for water connection fees for connections made for which monies were not properly paid by plaintiff to defendant.

In response, plaintiff filed a motion for summary judgment supported by affidavits. Plaintiff alleged its entitlement to a favorable ruling from the trial court by asserting that there were no genuine issues of material fact.

During the hearing on the motion, defendant contended that the term "extension," as applied in the purchase agreement, raised a genuine issue of material fact. Defendant maintained that the meaning of the term "extension" included all water mains as part of the Northfield water main system for connection fee purposes. Defendant also requested that the trial court conduct a hearing concerning the meaning of the term. After extensive colloquy with defendant regard-

ing the meaning of the term, the trial court declined to conduct an evidentiary hearing.

On April 24, 1989, the trial court entered a declaratory judgment order in favor of plaintiff. The court made the following findings: (1) that there were no genuine issues of material fact, and that the language of paragraph 5 of the purchase agreement was not ambiguous and could be interpreted by the court as a matter of law; (2) that subsequent to the acquisition of the Northfield water distribution system, Glenview converted the system from a well water source of supply to a Lake Michigan source of supply by means of constructing a 30-inch water transmission main which reduces to a 24-inch water transmission main for the delivery of Lake Michigan water from the Village of Wilmette to a reservoir located within the Northfield Certified Area; (3) that the extension of the 30-inch and 24-inch water transmission mains was an extension of Glenview's water main system; and (4) that the point of connection between Glenview's 24-inch water transmission main and the contemplated 20-inch water transmission main is outside of the Northfield Certified Area and is not connected to " 'seller's present water main system or any extension thereof.' "

During the hearing on the motion for summary judgment, the trial court articulated several reasons for granting the motion for summary judgment and entering a declaratory judgment order on behalf of plaintiff. The court stated as follows:

"The contract language in dispute here is *** [in] paragraph 5 of the contract ***.

*** [F]or the purposes of this motion *** the language is not ambiguous, [and] is acceptable to an appropriate application by a Court on a motion for summary judgment.

The language must be viewed in light of the fact that it was entered into as a purchase *** by a municipality of an entire water supply system district.

*** [A]ccommodation was made for 15 years to give Northfield compensation for connections made within and without the present *** water main system or any extension thereof. That's the relevant language.

* * *

Glenview now wants to supply Citizens Utility with Lake Michigan water *** in a service area well to the west of the current Glenview system.

***

The fact that it's near it is really irrelevant. It's [sic] nearness has nothing to do with the entitlement of Northfield to a

connection fee. The 24-inch line *** is not a hook up to any extension of the Northfield system.

*** [T]he 20-inch connection being made by Glenview to service Citizens is not a connection to the *** 'present water main system or any extension thereof' of Northfield.

Since it is not such a connection, *** Northfield has no entitlement to connection fees ***.

Those connections are not the connections contemplated by paragraph five of the Northfield-Glenview agreement ***.

The Court is not in need of affidavits or expert testimony. *** [The] language [of paragraph 5] does not mean the kind and type of connection which is about to be made by Glenview for and on behalf of its contract with Citizens."

On April 24, 1989, defendant filed a motion to reconsider the declaratory judgment order of April 24, 1989. On August 14, 1989, the trial court denied defendant's motion. Defendant now appeals.

First, defendant maintains that the threshold requirements for summary judgment were not met. Specifically, defendant alleges that plaintiff failed to meet its burden of proof because plaintiff failed to establish that it had a clear legal right to summary judgment. Defendant also maintains that the trial court erred when it granted summary judgment because there were genuine issues of material fact, and because the trial court failed to search the record in order to determine whether a genuine issue of material fact existed. Furthermore, defendant maintains that summary judgment was improperly granted because the trial court failed to exercise caution before granting summary judgment so as not to preempt defendant's right to a trial. Plaintiff maintains that it met its burden of proof and that the trial court's grant of summary judgment was proper.

Summary judgment should be awarded with caution so as not to encroach upon the movant's right to a trial. (*Rodgers v. Hook-SuperX, Inc.* (1990), 204 Ill. App. 3d 861, 863; *Decatur Construction, Inc. v. Central Illinois Public Service Co.* (1974), 16 Ill. App. 3d 1056, 1059.) When ruling on a motion for summary judgment, the trial court must consider the entire record. *Schumacher v. Fatten* (1958), 18 Ill. App. 2d 387, 390-91.

"[T]he moving party for summary judgment must affirmatively show a clear legal right thereto ***." (*Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 387; see *Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842; *Wood River Area Development Corp. v. Germania Federal Savings & Loan Association* (1988), 165 Ill. App. 3d 488, 491.) The opponent of a motion for sum-

mary judgment is not required to prove his case. However, the non-movant has a duty to present a factual basis which would arguably entitle him to a judgment. *Lutz v. Goodlife Entertainment, Inc.* (1990), 208 Ill. App. 3d 565, 568; see also *Winnetka Bank*, 202 Ill. App. 3d at 387-88.

"Summary judgment is appropriate only when the pleadings, depositions, admissions on file, and affidavits present no genuine issue of material fact ***." (*Burghardt v. Remiyac* (1991), 207 Ill. App. 3d 402, 406; see also *Winnetka Bank*, 202 Ill. App. 3d at 387; *Wood River Area Development Corp.*, 165 Ill. App. 3d at 491.) A disputed issue of material fact exists "[where] a material writing contains an ambiguity requiring the admission of extrinsic evidence." *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 558.

If reasonable persons disagree upon the facts of the case, the trial court should deny summary judgment and allow such disputed facts and inferences to be resolved by a trial court. *Winnetka Bank v. Mandas* (1990), 202 Ill. App. 3d 373, 387.

We find that plaintiff met its burden of proof for summary judgment. There are no genuine issues of material fact in this case. Defendant alleges that there are disputed issues of fact with respect to the definition of the term "extension," as it applies to this cause of action, matters regarding certain water atlases and the merits of the evidence presented by way of affidavits and depositions. Defendant's disagreement with the interpretation of this evidence does not constitute a genuine issue of material fact.

The material facts as set forth by plaintiff remain unrebutted. The record establishes, among other things, that the location of the connection point between plaintiff's 24-inch water transmission main and the contemplated 20-inch water transmission main is outside of the Northfield Certified Area, which would be served through "seller's [Northfield's] present water main system or any extension thereof," and that the contemplated 20-inch water transmission main would be dedicated solely for the delivery of Lake Michigan water to Citizens without the benefit of the old Northfield water main system or any extension thereof.

We find that the threshold requirements for summary judgment were met. Plaintiff has shown a clear legal right to summary judgment. The trial court's decision is well reasoned and stands as an appropriate application of the law to the facts. We find that the trial court made a cautious decision to grant the plaintiff's motion for summary judgment (see *Rodgers v. Hook-SuperX, Inc.* (1990), 204 Ill. App. 3d 861, 863; *Decatur Construction, Inc. v. Central Illinois Pub-*

*lic Service Co.* (1974), 16 Ill. App. 3d 1056, 1059), after a close review of the entire record. See *Schumacher v. Fatten* (1958), 18 Ill. App. 2d 387, 391.

The second issue is whether the trial court's construction and interpretation of the word "extension" was proper. Defendant maintains that the trial court erred in granting summary judgment because the trial court failed to comply with the law governing the construction of contracts containing technical terminology since the trial court declined to conduct an evidentiary hearing and to allow expert testimony. Defendant also alleges that the trial court erroneously granted summary judgment because it rejected the definition of the term favored by defendant. Plaintiff maintains that the trial court's interpretation and construction of the word "extension" was proper and that the court's construction of the term does not render its grant of summary judgment improper.

█ We recently ruled that contract terms must be given their plain, ordinary, popular and natural meaning. (*Hartford Insurance Co. v. Jackson* (1990), 206 Ill. App. 3d 465, 470; *Lucas v. Beaton* (1990), 201 Ill. App. 3d 341, 346-47.) In addition, "[p]arties in entering into an agreement are presumed to have used terms having no technical meaning * * *, and the words are to be construed according to their common understanding and common usage." *Wolf v. Schwill* (1917), 282 Ill. 189, 191.

In *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, the Illinois Supreme Court ruled that it is within the discretion of the trial court to determine whether it needs assistance in understanding evidence. (*Hernandez*, 73 Ill. 2d at 99.) Even if a contract term of a private agreement has some peculiar meaning, it is within the discretion of the trial court to seek expert assistance with respect to its interpretation. *Hernandez*, 73 Ill. 2d at 99.

Whether or not an ambiguity exists is a question of law to be determined by the trial court. (*Rao v. Parvathaneni* (1979), 72 Ill. App. 3d 1, 5.) A contract is not ambiguous if a court can ascertain its meaning from the general contract language. (*Gardner v. Padro* (1987), 164 Ill. App. 3d 449, 453.) Furthermore, a contract is not ambiguous simply because the parties disagree on the meaning of its terms. (*Gardner*, 164 Ill. App. 3d at 453; *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 842; see also *Fink v. Baker* (1977), 46 Ill. App. 3d 1061, 1067; *Welsh v. Centa* (1966), 75 Ill. App. 2d 305, 311.) "In the absence of an ambiguity, the intention of the parties * * * must be ascertained by the language utilized in the contract itself, *not by the construction placed upon it by the parties.*"

(Emphasis added.) *Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293; see also *Gardner*, 164 Ill. App. 3d at 453.

■ For purposes of summary judgment, a genuine issue of material fact exists where a material writing contains an ambiguity requiring the admission of extrinsic evidence. (*Cory v. Minton* (1977), 49 Ill. App. 3d 312, 316.) However, where the intent of the parties may be ascertained from the plain language of the contract, no disputed question of fact exists. *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 558.

■ We find that the trial judge properly construed the word "extension" and that the judge correctly determined that a connection fee would not be payable in accordance with paragraph 5 of the purchase agreement. The trial court properly rejected the definition of the word "extension" favored by defendant. The court found, and the record established, that the contemplated connection at Joy Lane and East Lake Avenue in Glenview would be unrelated to the Northfield water system, and that the connection to be made was not "an extension * * * of [s]ellers' present water main system."

Defendant's argument that the trial court should have conducted a hearing and allowed expert testimony to aid it in its construction of the word "extension" is misplaced. The word "extension" is presumed to have a nontechnical meaning. (See *Wolf v. Schwill* (1917), 282 Ill. 189, 191.) In the absence of contrary contract provisions, the trial court properly construed this term according to its plain meaning and common usage. (See *Hartford Insurance Co. v. Jackson* (1990), 206 Ill. App. 3d 465, 470; *Lucas v. Beaton* (1990), 201 Ill. App. 3d 341, 346-47.) It was well within the trial court's discretion to determine that the court did not need assistance in order to comprehend the meaning of the term "extension." See *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 98-99.

Moreover, in the instant case, the contract in question is not ambiguous (see *Rao v. Parvathaneni* (1979), 72 Ill. App. 3d 1, 5), and therefore defendant's divergent view with regard to the meaning of the word "extension" does not create a genuine issue of material fact which precludes summary judgment. See *Gardner v. Padro* (1987), 164 Ill. App. 3d 449, 453; *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.* (1985), 137 Ill. App. 3d 550, 558; *Cory v. Minton* (1977), 49 Ill. App. 3d 312, 315; *Tondre v. Pontiac School District No. 105* (1975), 33 Ill. App. 3d 838, 842.

In addition, we find defendant's reliance upon *Toledo, St. Louis & Western R.R. Co. v. East St. Louis & Suburban Ry. Co.* (1915), 197 Ill. App. 230, *aff'd on reh'g* (1917), 206 Ill. App. 216, inappropriate.

*Toledo, St. Louis & Western R.R. Co.* was an action in assumpsit whereby the plaintiff alleged that the defendant breached their contract. The contract in issue allowed the defendant to "cross plaintiff's right of way, \*\*\* providing that defendant in crossing should first bring its cars to a full stop and remain until the conductor in charge of such cars should 'flag said crossing.' " (*Toledo, St. Louis & Western R.R. Co.*, 206 Ill. App. at 216.) The plaintiff alleged that the defendant drove the car on to the plaintiff's tracks without "flagging" in accordance with the terms of the contract. (*Toledo, St. Louis & Western R.R. Co.*, 197 Ill. App. at 234.) During the trial, the plaintiff contended that the term "flagging" had a special meaning, and the plaintiff sought to define "flagging" for the trial court. (*Toledo, St. Louis & Western R.R. Co.*, 197 Ill. App. at 235.) After the trial court refused to permit the plaintiff to explain this term, the plaintiff appealed. This court held that the trial court's refusal to permit the plaintiff to explain this term constituted reversible error. (*Toledo, St. Louis & Western R.R. Co.*, 197 Ill. App. at 235.) The court based its decision upon a prior supreme court ruling that testimony is admissible to explain the special meaning of a word in a particular trade or business. *Toledo, St. Louis & Western R.R. Co.*, 197 Ill. App. at 236.

We find that *Toledo, St. Louis & Western R.R. Co.*, 197 Ill. App. 230, is distinguishable from the case at bar. Under certain circumstances, testimony may be admissible to explain the meaning of a word which has a special meaning within a business or trade. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 516; *Hernandez v. Power Construction Co.* (1978), 73 Ill. 2d 90, 98-99.) However, as we noted above, our supreme court has recently ruled that it is within the *discretion* of the trial court to determine whether it needs assistance in understanding evidence. (See *Hernandez*, 73 Ill. 2d at 98-99.) In addition, the supreme court has ruled that where a contract term of a private agreement has a peculiar meaning, it is within the discretion of the trial court to seek expert assistance with respect to the interpretation of said term. (*Hernandez*, 73 Ill. 2d at 99.) Therefore, defendant's reliance upon *Toledo, St. Louis & Western Railroad Co.* is inappropriate.

For the aforementioned reasons, we conclude that the trial court's interpretation and construction of the word "extension" were proper and that the court's construction of the term does not render its grant of summary judgment improper.

■ Finally, plaintiff argues that defendant may not introduce precedent from States other than the State whose law governs the contract in order to interpret language of said contract.

In cases concerning the interpretation of a contract, courts have discretion to allow parties to introduce precedent from States other than the State whose law governs the contract. (See *Williams v. Sohio Petroleum Co.* (1958), 18 Ill. App. 2d 194, 198-200.) Therefore, defendant is free to introduce precedent from other States; however, Illinois courts are not bound by such precedent.

Accordingly, we find that defendant's introduction of precedent from other States was not improper.

For the foregoing reasons, we affirm the decision of the trial court.

Affirmed.

LINN and McMORROW, JJ., concur.