FIFTH DIVISION

1-98-1356 SEPTEMBER 30, 1999

AMERICAN NATIONAL TRUST COMPANY ) 

OF CHICAGO, as Trustee, Trust #1573 ) Appeal from the 

as transferred from AUSTIN BANK OF ) Circuit Court of 

CHICAGO, Successor to NATIONAL BANK ) Cook County. 

OF AUSTIN #4628, ) 

)

Plaintiff-Appellant, )

)

v. )

)

KENTUCKY FRIED CHICKEN OF SOUTHERN )

CALIFORNIA, INC., f/k/a NAUGLES, INC., ) No. 96 L 05576

a subsidiary of COLLINS FOODS ) 

INTERNATIONAL, INC., )

)

Defendant-Appellee, )

)

and )

) 

COLLINS FOODS INTERNATIONAL, INC., ) 

COLLINS PROPERTY PORTFOLIO, INC., and ) Honorable

SIZZLER INTERNATIONAL, INC., ) David G. Lichtenstein,

) Judge Presiding.

Defendants. )

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff American National Trust Company of Chicago, as trustee, under Trust #1573 (ANT), appeals from the circuit court's orders granting the motion of defendant Kentucky Fried Chicken of Southern California, Inc. (KFCSC) to dismiss ANT's amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code)(735 ILCS 5/2-619(West 1996) (section 2-619)) and denying ANT's motion to reconsider the court's dismissal of its amended complaint with prejudice.     

ANT, the owner of commercial real estate located in Des Plaines, Illinois, had filed suit against defendants KFCSC, f/k/a Naugles, Inc. (Naugles), a subsidiary of Collins Foods International, Inc. (Collins Foods), Collins Property Portfolio, Inc. (Collins Properties), and Sizzler International, Inc. (Sizzler), alleging breach of contract based on a failure to pay rent and real estate taxes and failure to maintain the premises pursuant to the terms of a lease it had executed with Naugles.  ANT raises as issues on appeal
 whether the circuit court (1) erred when it granted KFCSC's motion to dismiss ANT's amended complaint with prejudice where ANT alleges: (a) genuine issues of material fact exist which should have precluded dismissal; and (b) dismissal was inappropriate as a matter of law; and  (2) abused its discretion when it denied ANT's motion to reconsider its order dismissing ANT's amended complaint with prejudice.  The relevant facts derived from the pleadings follow. 

ANT, an Illinois land trust, is the current legal and equitable owner of the commercial property located at 1505 S. Elmhurst Road in Des Plaines (Property).  ANT holds the Property in trust for the beneficial owners, one of whom is Gregory C. Insolia, who acts as their agent; accordingly, ANT and Insolia are  referred to collectively as plaintiff or ANT.    

 On December 15, 1982, ANT and Naugles executed a 15-year lease of the Property.  Because the Property was to be specially designed for Naugles, the lease was to commence when certain conditions were met.  On February 15, 1985, ANT communicated to Naugles that the building was available for occupancy and that the 15-year term of the lease would commence on that date.  On about the same date, Naugles occupied the building and began paying rent under the lease provisions.
(footnote: 1)  In 1988, Naugles merged with KFCSC and was subsequently renamed KFCSC.  KFCSC assumed the liability under the lease.

On March 1, 1988, following the merger between Naugles and KFCSC, Naugles requested that ANT either terminate the lease on the Property or assign the lease to Collins Properties, a subsidiary of Collins Foods, a California corporation.  Naugles set forth this proposal in a letter, signed by its President, Samuel L. Sibert, which requested that ANT choose an alternative by signing and returning the document.  On March 11, 1988, ANT responded with its own letter, refusing to terminate the lease and further refusing to assign the lease to Collins Properties.  Additionally, ANT stated "[t]his reply to your unsolicited proposal is in no way to be construed as a waiver or release by the lessor of any of the terms and conditions of the lease  between the lessor and Naugles, Inc. ***."  

ANT received a second letter regarding the assignment, dated June 8, 1988, and signed by Werner Poiser, President of KFCSC.  ANT was again asked to consent to an assignment of the lease from KFCSC to Collins Properties.  A consent to assignment form was enclosed, which was to be executed.  The form set forth various conditions, including "that the Assignor shall not be relieved of any liability or obligation under the Lease." 

In a letter dated June 25, 1988 and sent to the executive office of Collins Foods, ANT again denied the request for consent.  ANT stated it had no knowledge of the financial standing  of the assignor or assignee, and requested such financial information, as well as sales reports.  ANT also queried, "Will the assignor guarantee lessee's performance and observance of all covenants and agreements under the lease?"  ANT did not execute or return the consent to assignment form to Poiser.

Neither KFCSC, Naugles, nor Poiser responded to ANT's June 25, 1988 letter.  In a letter to KFCSC dated October 30, 1988, Gregory C. Insolia, in his capacity as agent for ANT's beneficial interests, stated he never received a response to his letter and that "[u]nder these circumstances the lessor is not unreasonable to withhold his consent which is the lessor's position at this time." 

On March 12, 1991, allegedly without ANT's knowledge, KFCSC assigned all its "right, title and interest in" the lease to Collins Properties, the assignment having been executed by the respective presidents and secretaries of KFCSC and Collins Properties.  ANT did not consent to the assignment.  Collins Properties, the assignee under the lease, handled the real estate aspects of Collins Foods.  Prior to 1996, Collins Foods and Collins Properties were acquired by Sizzler, a large corporation which owns and operates numerous divisions, subsidiaries and affiliates.    

 Over the course of the next five years, ANT accepted rent checks issued to it by Sizzler, for Collins Properties on a monthly basis.  Further, during a tax appeal, ANT requested Sizzler and Collins Properties to execute affidavits on ANT's behalf, stating that Collins Properties was ANT's lessee of the property.  On May 17, 1996, ANT filed a complaint in the circuit court of Cook County against each of the four defendants, alleging breach of contract based on their failure to pay rent and demanding damages in the amount of $105,000, as payment for the remainder of the rental term or until December 1997.  The complaint alleged that on  April 1, 1996, defendants defaulted under the lease terms by failing to pay rent and real estate taxes or to maintain the premises.  ANT served a notice of default dated April 8, 1996, pursuant to the terms of the lease.  On May 22, 1996, KFCSC was served, and it subsequently filed its appearance, answered the complaint and, as affirmative defenses to the action, asserted that ANT had either expressly or impliedly consented to an assignment of the lease to Collins Properties and, as a result, either waived or was estopped from collecting rents from KFCSC.  

On September 30, 1996, Sizzler, Collins Foods and Collins Properties were served.  No appearances were filed for them.

On June 2, 1996, allegedly without ANT's knowledge, Sizzler and its subsidiaries, including Collins Foods and Collins Properties, filed for bankruptcy in United States Bankruptcy Court for the Central District of California.  As part of the bankruptcy proceedings, Sizzler and Collins Properties rejected the subject lease as an executory contract; possession of the premises was returned to ANT; the lease was terminated; and Collins Properties was no longer monetarily obligated under the lease.  On October 7, 1996, ANT filed a proof of claim against Sizzler and Collins Properties in the bankruptcy proceedings, demanding the amount of $90,233.42 for rent, taxes, and maintenance, claimable under the Bankruptcy Code.  Defendants allege that ANT formally acknowledged the assignment of the lease to Collins Properties, when it filed its proof of claim against Sizzler and Collins Properties.  

On November 22, 1996, KFCSC filed a motion for stay of proceedings, requesting that the circuit court of Cook County stay the state court action until resolution of the California bankruptcy proceedings.  ANT filed a response, objecting to a stay of the proceedings against KFCSC, a non-party to the bankruptcy action, and maintaining that KFCSC's obligations under the lease were independent and unrelated to those of the bankrupt parties.  On January 2, 1997, the court denied KFCSC's motion for stay of proceedings without prejudice and instead stayed the proceedings against only the bankrupt parties.  The court removed and transferred that portion of the case relating to the bankrupt parties to the presiding judge of the Law Division.  The action against KFCSC alone proceeded in the circuit court.

On July 17, 1997, as part of the bankruptcy proceedings, ANT, Collins Properties and Sizzler executed a stipulation, which was filed with and entered by the Bankruptcy Court on August 26, 1997, and August 29, 1997, respectively.  The stipulation created a contract between ANT, Collins Properties and Sizzler and provided that ANT would withdraw all but one of its claims and reduce that claim from $90,233 to $64,226.  In return, Collins Properties and Sizzler agreed to pay that remaining ANT claim without objection.  

In the stipulation, ANT and Collins Properties are identified as the landlord and 
tenant
/debtor, respectively, with Sizzler being referred to as "SII."  In the first recital, Collins Properties is acknowledged as being a party to the lease.  As part of the stipulation, and in return for the payment of $64,226, the property granted Collins Properties and Sizzler a release.
(footnote: 2)  

The stipulation was explicitly integrated.
(footnote: 3)
The stipulation, among other things, contained a paragraph regarding third party beneficiaries.
(footnote: 4)  KFCSC was not specifically named as a party in the bankruptcy release and did not execute the bankruptcy release. 

On August 19, 1997, ANT filed an amended complaint in Cook County, with leave of the circuit court.  In its amended complaint, ANT demanded from KFCSC damages in the amounts of $230,000 for the remainder of the rental term (April 1996 until February 2000), and $10,000 for failure to maintain the premises, plus damages for the payment of real estate taxes for the years 1995 through 1999.  ANT did not disclose in the amended complaint that it had received monies from Collins Properties in settlement of claims under the subject lease.  

On September 19, 1997, subsequent to the resolution of the bankruptcy proceedings, KFCSC filed a section 2-619 motion to dismiss the amended complaint on the grounds that ANT released KFCSC from liability under the lease when it  accepted funds in the bankruptcy proceedings and released all claims against Sizzler and Collins Properties and their "predecessors-in-interest."  Specifically, KFCSC's motion was premised on the assertion that ANT voluntarily executed a general release discharging Collins Properties and its predecessors-

in-interest from liability connected with the lease.  KFCSC alleged it became a predecessor-in-interest when it "assigned its total interest in the Lease to Collins," and that the release clause in the stipulation applied to KFCSC.  As part of the assignment, KFCSC argued Collins Properties specifically assumed the lease and all KFCSC's obligations thereunder and that over the course of the next five years, ANT ratified the assignment because it accepted rent checks issued by Sizzler on behalf of Collins Properties on a monthly basis.

On October 28, 1997, ANT filed a response to KFCSC's motion to dismiss, objecting to its assertion that KFCSC was a predecessor-in-interest to Collins Properties or Sizzler because KFCSC assigned the lease, without consent from ANT and in direct violation of the lease terms, to Collins Properties, a subsidiary of Sizzler, thereby remaining primarily liable under the lease, despite any assignment of the lease to Sizzler or Collins Properties.  The term "predecessor-

in-interest," ANT argued, is susceptible to different meanings; and since the general release language does not expressly apply to KFCSC, a review of the intent of the parties to the release is necessary to its interpretation.    

On November 12, 1997, KFCSC replied to ANT's various objections, arguing that Illinois courts view assignments as creating predecessor/successor relationships and, therefore, KFCSC is Collins Properties' predecessor-in-

interest and was released from its obligations under the lease; ANT waived its claim that the assignment was invalid; ANT's claim that the term "predecessor-in-

interest" as to assignors is inapplicable to releases in bankruptcy cases lacks merit; that it was not necessary for KFCSC to be a party discharged in the bankruptcy action in order to be considered a predecessor-in-interest; and that KFCSC was not excluded by the release.

In support of the November 12, 1997 motion, Delno G. Kanode, senior real estate counsel for Sizzler, submitted an affidavit in which he averred that on August 20, 1996, Greg Insolia requested that he execute two affidavits which would be sent to him in connection with a 1996 tax appeal regarding the Property.  Kanode further averred he signed and returned those affidavits to Insolia's lawyers, which revealed that Kanode was the corporate secretary of Collins Properties, designated as the lessee of the subject property.  

On December 10, 1997, after hearing limited argument on KFCSC's motion to dismiss, the circuit court granted the motion and dismissed the case with prejudice, as previously stated.  No court reporter was present.  No specific reasoning or legal findings were incorporated into the order or stated by the court, nor did the court submit a written memorandum.  

ANT filed a motion to reconsider on January 9, 1998.  John Gierum, ANT's bankruptcy counsel, averred, among other things, in his affidavit in support of that motion, that Gregory Insolia informed him he wanted to pursue his claims  against Sizzler and Collins, but also wished to pursue his breach of contract action against KFCSC in Cook County.  Gierum further stated he never had a discussion with KFCSC about settling ANT's cause of action against KFCSC, that there was no discussion with Collins or Sizzler that settlement with them would also settle ANT's cause of action against KFCSC, and that the bankruptcy settlement was only a settlement with Collins and Sizzler and was never intended to be a settlement with KFCSC.  He also averred he never would have signed the stipulation and release, nor would have directed ANT to do so, if the release included KFCSC because ANT wanted its claims against KFCSC to be preserved and decided by the circuit court.

In his affidavit in support of ANT's motion to reconsider, Gregory C. Insolia averred, among other things, "[t]here was never an intent on my part to settle any case against KFC as part of a settlement in the bankruptcy case."

On March 20, 1998, the circuit court issued an order denying the motion to reconsider in all respects except one:  "[t]he order of Dec. 10, 1997 should be modified on its face to reflect that the motion to dismiss was allowed for the reasons stated by the movants in their written motion papers."  Counsel for ANT asked the court to clarify its ruling for the record, which the court declined to do.  This appeal followed.

I  

ANT first contends that the circuit court erred when it granted KFCSC's motion to dismiss its amended complaint pursuant to section 2-619, where it allegedly either ignored disputed issues of material fact or decided legal issues based on a misapprehension of law.

The decision to grant a section 2-619 motion to dismiss is proper where no set of facts may be proved by which a plaintiff can recover.  
Management Ass'n of Illinois, Inc. v. Board of Regents of Northern Illinois University
, 248 Ill. App. 3d 599, 606, 618 N.E.2d 694 (1993).  For purposes of the motion to dismiss, all well-pleaded facts alleged in the complaint are taken as true; conclusions which are not supported by specific factual allegations are not considered
.  
Mostafa v. City of Hickory Hills
, 287 Ill. App. 3d 160, 165, 677 N.E.2d 1312 (1997).  Where defects do not appear on the face of the pleadings, affidavits may be filed, stating affirmative matters which justify dismissal.  
Management Ass'n of Illinois, Inc.
, 248 Ill. App. 3d at 606.  Review of the granting of a section 2-619 motion to dismiss is 
de
 
novo
.  
Kedzie and 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993)
; 
Mostafa
, 287 Ill. App. 3d at 165.  The question with which this court is presented on appeal is whether the existence of a genuine issue of material fact should have precluded dismissal of the complaint or, absent an issue of fact, whether dismissal is proper as a matter of law.  
Zedella v. Gibson
, 165 Ill. 2d 181, 185-86, 650 N.E.2d 1000 (1995)
.

ANT's initial argument is that because the circuit court failed to make a finding as a matter of law as to whether there had been a proper assignment of the subject lease between KFCSC and Collins Properties and Sizzler, its finding that KFCSC was a predecessor-in-interest, as referenced in the release and as excused from liability under the lease, was improper.  The absence of a court's reasoning for granting a motion to dismiss requires the assumption that the motion was granted on the basis of all the issues that were raised.  
Bowers v. Du Page County Regional Board of School Trustees District No. 4
, 183 Ill. App. 3d 367, 374, 539 N.E.2d 246 (1989).  There is no reversible error where a court's judgment is "justified in the law for any reason or ground appearing in the record regardless of whether the particular reasons given by the trial judge, or his specific findings, are correct or sound." 
Thornton v. Williams
, 89 Ill. App. 3d 544, 549, 412 N.E.2d 157 (1980).

Restrictions against assignments are intended to benefit only the lessor of property and where attempted assignment of a lease by a tenant is in contravention of its terms, the assignment is only voidable, not void.  
Woods v. North Pier Terminal Co.
, 131 Ill. App. 3d 21, 23-24, 475 N.E.2d 568 (1985).  Where the landlord does not elect to treat the leasehold as void, the requirements of the lease regarding its assignment are deemed waived.
  
Bolingbrook Equity I Limited Partnership v. Zayre of Illinois, Inc.
, 252 Ill. App. 3d 753, 766, 624 N.E.2d 1287 (1993); 
Woods
, 131 Ill. App. 3d at 24.  In the present case, the circuit court modified its original order granting KFCSC's motion to dismiss to state that "the motion to dismiss was allowed for the reasons stated by the movants in their written motion papers."  

The record here demonstrates that KFCSC assigned the lease to Collins Properties and Sizzler and that ANT's undisputed conduct subsequent to that assignment proves its acquiescence therein.  First, ANT accepted monthly rent checks issued by Collins Properties and Sizzler for a period of five years.  Second, ANT directly requested, as part of a 1996 tax appeal, that Sizzler's senior real estate counsel execute affidavits on ANT's behalf, stating that Collins Properties was the lessee of the property.  Third, ANT filed a proof of claim in the Collins Properties and Sizzler bankruptcy proceedings for rents owed under the lease.  Fourth, ANT signed the stipulation in the bankruptcy action, stating that Collins Properties is a party to the lease and the "
tenant
/debtor."  Finally, ANT accepted more that $64,000 from Collins Properties and Sizzler in 
full satisfaction of its claim arising under the lease
.  Notwithstanding its assertion that it did not give express, written consent to the assignment, ANT does not dispute the foregoing facts.  Therefore, although ANT did not initially consent to the assignment, its subsequent conduct fully implied an acceptance.  ANT has thereby waived any argument it may have had that the assignment was invalid and is estopped from claiming that KFCSC is liable under the lease. 

A review of plaintiff's response to defendant's motion to dismiss reveals ANT argued that "KFCSC remains responsible to [ANT] for the rent and other obligations under the lease despite any purported assignment of the lease to Sizzler or Collins."  I
t would be inequitable to allow ANT to treat the assignment as valid for purposes of collecting rent (or financial settlements) from assignees, but invalid when seeking to collect monies from the original lessee, the assignor.  See 
Waukegan Times Theatre Corp. v. Conrad
, 324 Ill. App. 622, 632, 59 N.E.2d 308 (1945).  This is true even where the assignee has defaulted.  The circuit court did not err in dismissing ANT's amended complaint with prejudice.

II

To be determined next is whether KFCSC was entitled to be considered a "predecessor-in-interest," included among those benefitting from the release between ANT and Collins Properties and Sizzler.

To establish KFCSC's relationship with Collins Properties, the March 12, 1991 assignment between KFCSC, the assignor, and Collins Properties, the assignee, must be considered.
(footnote: 5)  

As between those parties, following the assignment, Collins Properties stood in the position KFCSC originally held under the lease.  Assignments establish a relationship between the parties in which the assignor is the predecessor-in-interest, and the assignee is the successor-in-interest.  See 
Morris v. Union Oil Co. of California
, 96 Ill. App. 3d 148, 151, 421 N.E.2d 278 (1981); and 
Harris Trust and Savings Bank v. La Salle National Bank
, 208 Ill. App. 3d 447, 449, 567 N.E.2d 408 (1990).  Importantly, ANT has failed to cite one Illinois case, stating that an assignor is not a predecessor-in-interest to an assignee.  

ANT persists in the theory, however, that since KFCSC allegedly remained primarily liable under the lease following the assignment, it is precluded from being Collins Properties' predecessor-in-interest.  Where an assignor assigns all of its interest and title to real estate and the assignee accepts the corresponding obligations pursuant to the assignment, as between them, the assignee holds the identical interest the assignor did prior to the assignment.  This is all that is required to establish the predecessor/successor relationship.  It is the predecessor in Collins Properties' interest that must be identified for purposes of construing the release contained in the stipulation in this case.  ANT's assertion that assignor liability specifically precludes a predecessor/successor relationship for purposes of the release is without legal authority.  The assignor's continuing liability provision of the lease did not preclude a predecessor/successor in interest relationship between KFCSC and Collins Properties as assignor and assignee.  If ANT desired the preclusion of this result, it should not have included "predecessors-in-interest" among those to be released from liability.  Accordingly, pursuant to the stipulation, KFCSC plainly is Collins Properties' predecessor-in-interest and must be deemed a "Releasee" under the stipulation.

ANT further urges that the term predecessor-in-interest, as contained in the stipulation, is ambiguous and therefore  the circuit court should have ascertained the parties’ intent in drafting the stipulation.  ANT's basis for its assertion is that the term predecessor-in-interest has differing meanings under real estate, bankruptcy and corporate law.  The terms of a contract, however, must be given their plain, ordinary, popular and natural meaning.  
Village of Glenview v. Northfield Woods Water and Utility Co., Inc.
, 216 Ill. App. 3d 40, 48, 576 N.E.2d 238 (1991).  
Whether an ambiguity exists is a question of law for the circuit court to decide.  
Village of Glenview
, 216 Ill. App. 3d at 48.  There is no ambiguity in a contract if a court can ascertain its meaning from the general language of the contract.  
Disagreement among the parties as to the meaning of its terms does not render a contract ambiguous.  
Village of Glenview
, 216 Ill. App. 3d at 48.  Absent an ambiguity, "'the intention of the parties *** must be ascertained by the language utilized in the contract itself, 
not by the construction placed upon it by the parties
.' (Emphasis added.)"  
Village of Glenview
, 216 Ill. App. 3d at 48-49, quoting 
Lenzi v. Morkin
, 103 Ill. 2d 290, 293, 469 N.E.2d 178 (1984).

Further, a reasonable interpretation of the stipulation must include, but not necessarily be limited to, the law governing real estate leases.  The interpretation under real estate law that an assignor is a predecessor-in-

interest to an assignee is not precluded merely because the term predecessor-in-

interest has been used to describe other types of entities in other contexts.  Absent an express limitation in the stipulation itself, the circuit court properly interpreted the term predecessor-in-interest in an inclusive manner.  In 
Rakowski v. Lucente
, 104 Ill. 2d 317, 325, 472 N.E.2d 791 (1984), our supreme court held:

"As a matter of public policy the settlement of claims should be encouraged.  If we were now to add limitations not expressed in the general language of the settlement instrument *** we would make those who desire to end litigation wary and uncertain of what they would accomplish by settlement.  ***  Holding the parties to the language of their release has the advantage of providing certainty and thereby encouraging settlement." 

ANT's authority to have made a claim and accepted a settlement for rents under the lease in the Collins Properties and Sizzler bankruptcy proceedings existed by virtue of the fact that Collins Properties and Sizzler were successors-in-interest under the lease.  There was no other direct lease relationship between ANT and Collins Properties and Sizzler; successor-in-

interest liability only could have been derived by KFCSC's assignment of the lease to Collins Properties and Sizzler, and ANT's tacit acceptance of that circumstance.  ANT's undisputed conduct supports the circuit court's determination that KFCSC is a predecessor-in-interest under the stipulation's terms and the release.  

Because the language of the stipulation is unambiguous, an inquiry into the parties' intent behind the language of the release is unnecessary.  
Gavery v. McMahon and Elliott
, 283 Ill. App. 3d 484, 487, 670 N.E.2d 822 (1996).  In any event, any undisclosed intent on the part of ANT when drafting the stipulation has no effect on the interpretation of the stipulation; any particular interpretation that one of the parties may have had at the time the contract was executed is immaterial.  
Metro East Sanitary District v. Village of Sauget
, 131 Ill. App. 3d 653, 658-59, 475 N.E.2d 1327 (1985).  At the time the stipulation was executed, ANT had the information it needed to protect itself in the circuit court litigation.  In the bankruptcy action, ANT could have sought to exclude KFCSC expressly from the general release, or could have stated explicitly that its action against KFCSC in the circuit court of Cook County survived the stipulation.  ANT did not do so.  The circuit court properly rejected evidence offered by ANT to support its undisclosed intent argument.  

Finally, ANT's assertion that KFCSC did not provide sufficient, separate consideration for the release is also without merit.  Pursuant to the terms of the stipulation, ANT received more that $64,000 as consideration in exchange for releasing Collins Properties and Sizzler and their respective predecessors-in-

interest.  Since KFCSC belongs to one of the designated classes of intended beneficiaries, it is entitled to enforce the release of claims.  See 
Garcia v. Lovellette
, 265 Ill. App. 3d 724, 732, 639 N.E.2d 935 (1994) (holding it is unnecessary that a contract for the benefit of a third-party beneficiary identify him by name; the contract may define the party benefitted by class description.)   The circuit court properly granted KFCSC's motion to dismiss ANT's amended complaint with prejudice pursuant to section 2-619 of the Code, based on the undisputed facts and the proper application of law. 

III

Lastly, ANT contends that the circuit court abused its discretion when it failed to reconsider its December 10, 1997 order, dismissing ANT's amended complaint with prejudice, and failed to reinstate the cause of action.  ANT states that, as alleged above, the court improperly decided material factual disputes and made incorrect findings as a matter of law, in direct contravention of the standard under section 2-619.  It asserts that even when it brought such errors and misapplications of law to the court's attention, the court refused to reverse its decisions.  

The grant or denial of a motion for reconsideration lies within the discretion of the circuit court, which will not be reversed absent an abuse thereof.  
Greer v. Yellow Cab Co.
, 221 Ill. App. 3d 908, 915, 582 N.E.2d 1292 (1991).  Whether a court has abused its discretion "`in denying a party's motion to reconsider is tested by considering whether the refusal violated the moving party's right to fundamental justice and manifested an improper application of discretion.'"  
Greer
, 221 Ill. App. 3d at 915, quoting 
In re Marriage of Wilson
, 193 Ill. App. 3d 473, 478, 549 N.E.2d 1348 (1990).  

Based on the foregoing, the circuit court correctly applied the law to the undisputed facts in this case and did not abuse its discretion when it denied ANT's motion for reconsideration.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GREIMAN and HOURIHANE, JJ., concur.

FOOTNOTES
1:     
The lease set forth, among others, the following specific provision regarding assignment and subletting of the property:

"12.  
ASSIGNMENT AND SUBLETTING.
  Lessee shall not have the right to assign this Lease and sublet the premises unless receiving specific written permission from the Lessor.  The Lessor will not unreasonably withhold said permission, provided Lessee retains responsibility for the obligations of this Lease, and further provided that the Lessee provides statements on the sublessee indicating that the Lessor shall have reasonable expectations of receiving its rents promptly."

The lease also provided a waiver provision which stated:

"19.  
Waiver.
  The waiver by either party hereto of any breach of any term, covenant or condition of this Lease to be performed by the other, shall not be deemed to be a waiver of any subsequent breach thereof."

2:     
The release stated in its entirety:

"4.  
General Release
.  Debtor, SII and Landlord further desire resolve [sic] any other claims or potential claims between the parties arising out of or in connection with the Lease.  Accordingly, except only as provided in this Stipulation, and subject to the entry of an order by the Court approving this Stipulation, Debtor, SII and Landlord hereby waive, release, acquit and forever discharge the other, and their respective agents, representatives, brokers, employees, attorneys, independent contractors, officers, directors, shareholders and partners, and their respective heirs, personal representatives, guarantors, 
predecessors-in-

interest
, successors and assigns (
collectively "Releasees"
), and each of them, of and from any and all claims, liabilities, demands, liens, penalties, costs, expenses, obligations, causes of action and rights of action, including, without limitation, attorneys' fees and costs, of any kind whatsoever, at law or in equity, known or unknown, which Debtor, SII or Landlord (as the case may be) has ever had or may hereafter acquire or possess against  the other and their respective Releasees arising out of or in connection with, directly or indirectly, the Lease, including without limitation any (a) claims for fixed rent, percentage rent and all other amounts which otherwise would be payable by Debtor, SII or Landlord under the Lease, 
whether said amounts accrued prior to or after the commencement of the case
; and (b) any condition or characteristic of the Property, or any part thereof or any mechanical or structural elements therein, including claims of waste or breach of the repair and maintenance obligations under the Lease.  Without limiting the generality of the foregoing, this release covers any scheduled claim or Proof of Claim not listed in this Stipulation.  Debtor, SII and Landlord each hereby waives the benefits of Section 1542 of the California Civil Code, which provides as follows:

`A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR EXPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM, MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.'

Debtor, SII and Landlord each expressly waives and relinquishes any and all rights and benefits under any state or federal statute and/or any common law which provides rights and benefits in any way similar to those provided in California Civil Code Section 1542."  (Emphasis added.)

3:     
The stipulation provided:

"6.  
Entire Agreement
.  This Stipulation, together with any related documents referred to in this Stipulation, constitute the entire understanding and agreement of the parties with respect to the subject matter of this Stipulation, and any and all prior agreements, understandings or representations are hereby terminated and canceled in their entirety and are of no further force or effect.  Each party hereto assumes the risk of any misinterpretation, concealment or mistake, and if any party hereto should subsequently discover that any fact relied upon in entering into this Stipulation was untrue, or that any fact was concealed from it, or that its understanding of the facts or law was incorrect, it shall not be entitled to set aside this Stipulation by reason thereof."

4:
The third party beneficiary provision stated:

"7.  
Third Party Beneficiaries.

Except for those parties comprising the Releasees who are not signatories to this Stipulation (each of whom are intended third party beneficiaries of this Stipulation and have the right to enforce the provisions hereof which expressly confer rights upon them), the execution and delivery of this Stipulation shall not be deemed to confer any rights upon any third party whatsoever or obligate either of the parties hereto to any person or entity other than to the other."

5:     
The assignment states, in part:

"B.  Assignor has agreed to assign to Assignee, and Assignee has agreed to accept from Assignor, all of Assignor's right, title and interest in and to said Lease and the leased premises and all improvements thereto, upon and subject to the provisions herein contained."

The assignment further provides, in pertinent part:

"1. Assignee does hereby accept said Assignment and the leased premises, and unconditionally and irrevocably agrees to pay and perform all obligations of the tenant pursuant to and arising out of the provisions of the Lease, on and after the date hereof and Assignee hereby agrees to be bound by all of the covenants, conditions and terms of the Lease.

Assignee shall indemnify and hold harmless Assignor from and against all claims, liability, costs, and expenses *** arising out of any act or omission of Assignee, its employees, agents, or officers, in the possession of the leased premises, or in the performance of the tenant's obligations under the Lease or this Assignment, occurring on or after the date hereof, except any such claim, liability, cost or expense directly caused by the negligence of [sic] willful act of Assignor."