**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 200460-U

Order filed August 27, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| SCOTT WILLIAMS, as the father and next best friend of TAYTUM WILLIAMS, a minor, | ) ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, La Salle County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-20-0460 Circuit No. 18-L-2 |
| STREATOR TOWNSHIP HIGH SCHOOL DISTRICT NO. 40, | ) ) ) | Honorable |
| Defendant-Appellee. | ) ) ) | Joseph P. Hettel, Judge, Presiding. |

JUSTICE LYTTON delivered the judgment of the court.
Justices Holdridge and Schmidt concurred in the judgment.

**ORDER**

¶ 1     *Held*: Trial court did not abuse its discretion in denying motion to reconsider summary judgment order where evidence was insufficient to sustain an allegation of willful and wanton conduct by school district.

¶ 2     Plaintiff, Scott Williams, as the father and next best friend of Taytum Williams, filed suit against defendant, Streator Township High School District No. 40 (Streator), for injuries his daughter sustained while operating a machine in the high school's technology lab. The trial court

granted defendant's summary judgment motion based on the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-108 (West 2020)) and denied Williams' motion to reconsider. Williams appeals from the order denying his motion to reconsider, claiming that the trial court abused its discretion by concluding that the high school did not engage in willful and wanton behavior. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      In January 2017, Taytum Williams was a high school freshman at Streator. On January 9, she was in the technology lab assisting with a presentation for incoming eighth grade students. The presentation involved high school students demonstrating how to use various pieces of equipment in the lab (modules) to make a screwdriver. Taytum was assigned to the electric circuit board module.

¶ 5      During the presentation, another student, Ellie Magana, asked Taytum to help her with the module she was demonstrating, an injection molding machine. The molding machine made a plastic handle for the screwdriver. To operate the molding machine, the student demonstrator filled a funnel with plastic beads, which were melted inside the machine. The student then pulled a lever and melted plastic was extruded through a nozzle into a mold. Ellie explained to Taytum that the machine was not filling the handle mold completely with plastic. She told Taytum that she had reported the problem to the teacher, David Marvin, but the machine was still malfunctioning. Ellie and Taytum walked to Marvin's desk and informed him again that the machine was not filling the mold properly. He told them to look at the machine and tell him what was causing the problem.

¶ 6      Taytum returned to the machine and attempted to fix it. She removed the mold template and pulled the lever to see if the machine would extrude plastic. The machine poured out a small amount of plastic, creating a round disk approximately the size of a quarter. Taytum grabbed a pair

a pliers sitting nearby and picked up the disk. As she moved the disk from the work area to the garbage can, hot plastic dripped from the disk and fell onto her right hand, burning her thumb and knuckles.

¶ 7        Williams, Taytum's father, filed a negligence complaint against Streator on behalf of his daughter. Streator's motion to dismiss based on the Tort Immunity Act was granted, and Williams was allowed to replead. In his amended complaint, Williams claimed, in part, that the high school willfully and wantonly directed Taytum to use equipment known as faulty or malfunctioning, failed to supervise the use of the molding machine, and failed to inform Taytum of safety instructions.

¶ 8        In her deposition, Taytum testified that she took Intro to Technology with Marvin in the fall of her freshman year and received an "A." During the class, she used most of the machines in the lab and spent two weeks using the injection molding machine. She also received in-class instruction as to the proper safety precautions for using the lab equipment. Students were told to wear safety googles when operating the technology machinery, but not gloves, aprons, or helmets.

¶ 9        Taytum stated that on the day of the presentation, she remembered how to use the molding machine from the fall semester. She described it as a "fairly easy machine." Taytum testified that when she reported the problem to Marvin, he told her to "see what [she] could do with it." Marvin did not give her specific instructions about how to deal with the problem. Taytum was not concerned about getting hurt when she went back to work with the machine. She could have asked Mr. Marvin to assist her or to fix the machine, but she did not. She "just decided to see if [she] could do something with it."

¶ 10        During his deposition, Marvin described the molding machine as "quirky." He testified that most of the time the machine was problem free, but sometimes heated plastic came out of the

3

machine at different rates, depending on the temperature. He stated that Taytum had taken "Foundations to Technology" in the fall of 2016 and had received training on the molding machine for couple of weeks. At the beginning of the semester, students were instructed not to place their hands underneath the machine and that safety glasses were mandatory.

¶ 11 Marvin testified that Taytum and the other students were asked to help with the presentation that day because they understood how to work with the machines. During the presentation, some students expressed a concern about the molding machine. Marvin told them to look at the machine and report back to him, but they did not return. It was his understanding that the problem had been resolved. Marvin noted that the molding machine had not required any repairs prior to the presentation.

¶ 12 After Taytum's accident, Marvin looked at the machine and did not observe any problem. It continued to operate as usual during the next round of demonstrations. Marvin testified that as of December 2, 2019 (the date of his deposition) the school still uses the molding machine and it continues to function properly. The machine has not required any repairs or maintenance since Taytum's injury.

¶ 13 Based on the parties' depositions, Streator moved for summary judgment, claiming that Marvin's conduct did not rise to the level of willful and wanton behavior. Williams responded to the motion, arguing that a genuine issue of material fact existed as to whether the high school's conduct was willful and wanton. Streator filed a reply, disagreeing that a genuine issue existed and citing Marvin's December 2, 2019, deposition.

¶ 14 The trial court entered an order granting the motion for summary judgment and dismissing the case with prejudice. The order stated that the court would reconsider its decision if Williams submitted a transcript of Marvin's deposition.

4

¶ 15 Williams filed a timely motion to reconsider and a copy of the deposition transcript. Following a review of Marvin's testimony, the trial court denied the motion.

¶ 16                                                      II. ANALYSIS

¶ 17 Williams appeals the denial of his motion to reconsider the summary judgment ruling. He claims the trial court abused its discretion by concluding that Marvin's conduct did not constitute willful and wanton behavior.

¶ 18                                              A. Standard of Review

¶ 19 Summary judgment is proper when the pleadings, depositions, and affidavits on file, construed in the light most favorable to the nonmoving party, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). The purpose of a motion to reconsider a summary judgment ruling is to bring to the court's attention newly discovered evidence, changes in the law, or errors in the court's previous application of existing law. *Landeros v. Equity Property & Development*, 321 Ill. App. 3d 57, 65 (2001). "Newly discovered" evidence is evidence that was not available to the parties prior to the hearing on the summary judgment motion. *Id.* A trial court's decision to grant or deny a motion for reconsideration lies within the court's discretion and will not be reversed absent an abuse of that discretion. *American National Trust Co. v. Kentucky Fried Chicken of Southern California, Inc.*, 308 Ill. App. 3d 106, 120 (1999).

¶ 20                                          B. Willful and Wanton Conduct

¶ 21 Section 3-108 of the Tort Immunity Act grants public schools immunity for failing to supervise an activity on or the use of school property. 745 ILCS 10/3-108(a) (West 2020). Willful and wanton conduct, however, is an express exception to that immunity:

"(a) Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." *Id.*

The Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." *Id.* § 1-210.

¶ 22    Willful and wanton conduct differs from negligence in that it " 'requires a conscious choice of a course of action, either with knowledge of serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable [person].' " *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d 429, 449 (1992) (quoting Restatement (Second) of Torts § 500 (1965)). To state a cause of action for willful and wanton conduct by a public school or its employee, the plaintiff must plead and prove the basic elements of a negligence claim and must further allege a deliberate intention to cause harm or a conscious disregard for the student's welfare. *Brooks v. McLean County Unit District No. 5*, 2014 IL App (4th) 130503, ¶ 38. Proof of willful and wanton conduct, in the absence of evidence of prior injuries, requires some evidence that the activity is generally associated with a risk of serious injury. *Barr v. Cunningham*, 2017 IL 120751, ¶ 21; see also *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 246 (2007); *Hadley v. Witt Unit School District 66*, 123 Ill. App. 3d 19, 23 (1984).

¶ 23    Illinois courts have held that school employees who exercise some precautions to protect students from injury, even if those precautions are insufficient, are not guilty of willful and wanton conduct. *Barr*, 2017 IL 120751, ¶ 24; see also *Lynch v. Board of Education of Collinsville*

6

*Community Unit District No. 10*, 82 Ill. 2d 415, 430-31 (1980). For example, in *Barr*, a student suffered an eye injury when he was struck with a ball in physical education class. *Barr*, 2017 IL 120751, ¶ 3. The plaintiff and 11 other students were playing floor hockey using plastic sticks and a "squishy" safety ball under the supervision of the physical education instructor. The ball bounced off the plaintiff's stick and hit him in the eye. None of the students were wearing safety googles even though they were available. The instructor testified that she did not require safety goggles for floor hockey because she thought the equipment was safe. She had not witnessed a safety ball striking a student in the face prior to the injury that day. No other student has suffered a serious injury prior to the plaintiff's injury. Id. ¶ 7. Our supreme court upheld a directed verdict in the defendants' favor. The court concluded that, given the absence of prior injury and the implementation of some safety features, the teacher's failure to require students to wear goggles did not establish a conscious disregard for the student's safety. *Id.* ¶¶ 18, 24.

¶ 24 In this case, the complaint alleged that Marvin's failure to supervise and provide adequate safety equipment amounted to willful and wanton conduct. However, in response to Streator's summary judgment motion, Williams' failed to provide any evidence demonstrating a deliberate intention to cause harm or a conscious disregard for Taytum's safety. Williams did not introduce any evidence that Marvin knew or had reason to know that the molding machine was a serious danger to others. Students had conducted numerous demonstrations using the molding machine that day without incident. In addition, the evidence presented showed that some safety precautions had been implemented. Taytum testified that she received safety training and instruction on the injection molding machine during the previous semester. She also testified that the school provided safety goggles. In addition, Marvin testified that he instructed the students to wear safety goggles and not place their hands under the molding machine. Taytum, herself, testified that the machine

was easy to use and that she was not worried about an injury when she removed the mold and pulled the lever on the machine. In her words, she "just decided" to see if she could fix it. In light of the safety precautions imposed and without any evidence of a prior injury, no triable issue of fact exists as to whether Streator is guilty of willful and wanton conduct.

¶ 25    Williams cites *Hadley* generally and insists that the willful and wanton standard does not require a previous injury or knowledge that an injury is imminent. In *Hadley*, a student filed suit against a teacher and the school district after he injured his eye in a high school industrial arts class. *Hadley*, 123 Ill. App. 3d at 20. The students were assigned woodworking projects during class. Instead of working on the assigned project, the plaintiff and some other students attempted to pound a piece of scrap metal through a hole in a work bench. The teacher saw the students hammering the scrap metal prior to the injury but did not tell them to stop or to put on safety goggles. A few minutes later, a shard of metal flew into the plaintiff's eye, causing permanent damage. The trial court granted summary judgment in favor of the school, and the appellate court reversed, finding that the instructor's failure to act after noticing that the students were engaged in a dangerous activity might constitute willful and wanton conduct. The court ruled that a genuine issue of material fact existed and the issue should have gone to the jury. *Id.* at 23.

¶ 26    Here, unlike *Hadley*, there was no evidence that the molding machine is inherently dangerous or that Marvin was aware of the dangerous activity prior to Taytum's injury. In response to the summary judgment motion, Williams failed to introduce evidence of any specific dangers associated with the molding machine in the technology lab or that it was otherwise an inherently dangerous piece of equipment. Moreover, Williams did not assert that Marvin witnessed Taytum reaching underneath the machine and failed to stop her from doing so.

¶ 27    Viewing the pleadings and depositions presented in the light most favorable to Williams, no genuine issue of material fact exists. The evidence failed to establish a course of action showing a deliberate intention to harm Taytum or an utter indifference or conscious disregard for Taytum's welfare. Even assuming, *arguendo*, that Marvin's deposition (presented as supplemental evidence in support of the motion to reconsider) was newly discovered evidence, it failed to create a triable issue. Marvin's deposition provides no evidence that he was aware that the molding machine was dangerous or that a prior injury had occurred that would have put a reasonable person on notice of the risk of serious injury. In this case, none of the deposition testimony raised a substantial factual dispute as to whether Streator's conduct was willful and wanton. We therefore conclude that the trial court did not abuse its discretion in denying Williams' motion to reconsider.

¶ 28                                III. CONCLUSION

¶ 29    The judgment of the circuit court of La Salle County is affirmed.

¶ 30    Affirmed.